USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_10/21/2021___



RECEIVED
OCT 2 1 2021
VALERIE CAPRONI
U.S. DISTRICT JUDGE
S.D.N.Y.

21-_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

In Re SALVADOR DIAZ,

*Petitioner.*

On Petition from the United States District Court for
the Southern District of New York
1:17-CR-0227
1:21-cv-02403

# PETITITON FOR A WRIT OF
# MANDAMUS TO THE DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF
# NEW YORK

SALVADOR DIAZ
Sal13diaz@hotmail.com
P. O. Box 151
Horntown, VA 23395
(347) 344-6571

Pro Se Petitioner

# Table of Content

STATEMENT OF JURISDICTION...............................................................................1
STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ......................................1
STATEMENT OF THE CASE ....................................................................................2
LEGAL STANDARD..................................................................................................3
THE THEORY OF PETITIONER'S LAWSUIT..............................................................4

    The trial court's statements,orders, and misapplication of the law so seriously compromised the appearance of impartiality that recusal is required under 28 U.S.C. § 455(a)...................................5

        The judge denied assignment of effective counsel....................................5

        The judge's denial of petitioner's first motion to dismiss was evidence of bias............................9

        The Court's View of Custis was incorrect....................................9

        The judge denied petitioner's second motion to dismiss....................................16

        The Supersedind Indictment Was Unlawful....................................18

        The judge denied petitioner's motion to obtain grand jury transcript....................................24

        The judge denied petitioner's motion to disqualify herself....................................26

    The trial judge denies the motion in a cursory opinion that casts further doubt on her impartiality. ...................................26

REASONS FOR GRANTING THE WRIT....................................................................26

    Recusal....................................................................................................27

    Mandamus..............................................................................................28

    The trial court's statements and Order so seriously compromised the appearance of impartiality that recusal was required under 28 U.S.C. § 455(a)....................................29

    Petitioner has no other adequate means of relief....................................30

    The propriety of disqualification is clear from the facts....................................31

    Mandamus is appropriate under the circumstances....................................32

CONCLUSION........................................................................................................34

# Table of Authorities

*Carr v. United States,* 540 U.S. _ 438 (2010)............................................passim
*United States v. Microsoft,* 253 F.3d 34 (D.C. Cir. 2001)....................................3
*Litkey v. United States,* 510 U.S. 540 (1994)....................................3
*McCoy v. Louisiana,* 584 US _ (2018)....................................6
*Mickens v. Taylor,* 535 U.S. 162 (2002)....................................7
*Von Moltke v. Gillies,* 332 U. S. 708 (1948)....................................8
*Custis v. United States,* 511 U.S. 485 (1994)............................................passim
*Dynes v. Hoover, 61 U.S. 65 (1857)*....................................15
*Burns v. Wilson,* 346 US 137, 142 (1953)....................................15
*United States v. Cronic,* 466 U.S. 648 (1984)....................................18
*United States v. Holcombe,* 883 F.3d 12 (2d Cir. 2018)............................................passim
*Nichols v. United States,* 136 S. Ct. 1 113 (2016)............................................passim
*United States v. Kopp,* 778 F.3d 986 (11th 3 Cir. 2015)....................................20

*United States v. Lewis*, 768 F.3d 1086 (10th Cir. 2014).....................................................20
*United States v. Howell*, 552 F.3d 709 (8th Cir. 2009)........................................................20
*United States v. Lange*, 834 F.3d 58 (2d Cir. 2016)...........................................................21
*United States v. Haslage*, 853 F.3d 331 (7th Cir. 2017).....................................................21
*Berger v. United States*, 295 U.S. 78 (1935)......................................................................25
*Ligon v. City of New York*, 736 F.3d 118 (2d Cir. 2013)......................................................27
*United States v. Bayless*, 201 F.3d 116 (2d Cir. 2000).......................................................27
*United States v. Antar*, 53 F.3d 568, 576 (3d Cir. 1995).....................................................28
*In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307 (2d Cir. 1988)..............................28
*In re United States v. Manzano*, 945 F.3d 616 (2d Cir. 2019)........................................28
*Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367 (2004)...........................................28,30
*In re Int'l Bus. Machines Corp.*, 618 F.2d 923 (2d Cir. 1980)...........................................29
*In re Cement Antitrust Litig.*, 673 F.2d 1020 (9th Cir. 1981)............................................30
*In re Aetna Cas. & Sur. Co.*, 919 F.2d 1136 (6th Cir. 1990)..............................................30
*Moody v. Simmons*, 858 F.2d 137 (3d Cir.1988).................................................................30
*In re Sch. Asbestos Litig.*, 977 F.2d 764 (3d Cir. 1992)......................................................31
*Rosen v. Sugarman*, 357 F.2d 794 (2d. Cir. 1966)..............................................................32

## Other Authorities

ABA Standard 4-1.3(d) Continuing Duties of Defense Counsel ...................................5
ABA Model Rule of Professional Conduct 1.2(a) (2016)...........................................5,6
16 Fed. Prac. & Proc. Juris. § 3935.5 (3d ed.).................................................................31

## Appendix

Addendum.....................................................................................................001-068

## STATEMENT OF JURISDICTION

Petitioner, Salvador Diaz, filed motion to vacate in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 2255, to vindicate rights protected by federal law.

This Court has jurisdiction to issue a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Petitioner claims that Judge Caproni's orders and decision deprived him of fundamental fairness and due process at trial in violation of his constitutional rights. Judge Caproni denied petitioner's constitutional right to effective assistance of counsel. The trial judge ordered petitioner not to present his theory of defense by reason of unlawful underlying conviction invoking "laws" and "citations" that are not supported by the record. Denied petitioner's motion to dismiss because of defective and unlawful indictment. Judge Caproni has consistently suppressed petitioner's legal arguments in support of his allegations and the key controlling case in the matter, *Carr v. United States,* 540 U.S. _ 438 (2010) to the point of falsely stating on the record that she knows of no case addressing the issue.

1

Petitioners asked the trial judge to recuse herself pursuant to 28 U.S.C. § 455(a), and she denied that motion. This petition asks whether the trial judge's impartiality might reasonably be questioned, and thus whether this Court should direct Judge Caproni to disqualify herself.

## STATEMENT OF THE CASE

Petitioner petitions this Court for a writ of mandamus to the United States District Court for the Southern District of New York. This petition arises out of Judge Valerie E. Caproni's decision denying the petitioner's motion to disqualify. Add.001–7. The judge's repeated failure to adhere to established precedents and irrational interpretations of others is indicative of bias against the petitioner. Petitioner seeks a writ of mandamus directing Judge Caproni to disqualify herself because her impartiality "might reasonably be questioned." 28 U.S.C. § 455(a).

Petitioner was convicted in the Southern District, (17-cr-0227), of failure to register in violation of 18 U.S.C. § 2250, with Judge Caproni as the trial judge. After the Second Circuit affirmed the conviction, (19-1895), petitioner file a motion to vacate pursuant to 28 U.S.C. § 2255. The motion was assigned to J. Caproni. The judge denied petitioner's motion to obtain grand jury transcript and a subsequent motion to recuse herself. Add. 009.

2

## LEGAL STANDARD

28 U.S.C. § 455(a) provides that "[any] justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might be reasonably questioned." The statute safeguards the public's confidence in judicial impartiality—a prerequisite to its faith in and adherence to judicial decisions. *United States v. Microsoft,* 253 F.3d 34, 114 (D.C. Cir. 2001). Because even the appearance of questionable impartiality poses a significant threat to these fundamental values, Congress created a very broad § 455(a) net, one that would ensnare not only those actually lacking impartiality, but also those whose impartiality might appear questionable to a reasonable person. See *Litkey v. United States*, 510 U.S. 540, 548 (1994) (emphasizing the objective nature of § 455(a) and noting that "recusal [is] required whenever 'impartiality might reasonably be questioned'"). Thus, when applying § 455(a), courts must ask whether a reasonable and informed observer would question a judge's impartiality. *Microsoft,* 253 F.3d at 114.

Section 455(b)(1) says that a judge must recuse himself if he "has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1). This is a test for actual bias that requires a judge to determine whether he can be

3

truly impartial when trying the case. *Holland*, 519 F.3d at 915. If the judge feels he cannot hear the case without bias, then the judge has a duty to recuse himself irrespective of how it appears to the public. *Id*. This test is "highly personal in nature and requires each judge in such a situation to set aside emotion" and thoroughly examine his ability to administer justice impartially.

**The theory of Petitioner's lawsuit.**

In 2000, after twenty years of service in the navy, Petitioner was convicted of a sex offense in what he believes was an unfair trial by court-martial. Petitioner has been trying to get a review of his unlawful court-martial for the past 20 years in various federal courts without success. His allegations have routinely been rejected on specious technicalities without hearings on the merits. In short, he has been unconstitutionally blocked by the various courts from having a substantive review of his allegations of unconstitutionality.

Petitioner was arrested on January 27, 2017 at his then home in Temperanceville, VA. He was transported to New York; indicted for failure to register pursuant to 18 U.S.C. § 1250

(a)In General.—Whoever—

4

(1) is required to register under the Sex Offender Registration and Notification Act;

(2)

(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; ~~or~~

~~(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country;~~ and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

**The trial court's statements, orders, and misapplication of the law so seriously compromised the appearance of impartiality that recusal is required under 28 U.S.C. § 455(a).**

### The judge denied assignment of effective counsel.

A defense counsel has "a duty to communicate and keep the client informed and advised of significant developments and potential options and outcomes." ABA Standard 4-1.3(d).

A "lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client

as to the means by which they are to be pursued" ABA Model Rule of
Professional Conduct 1.2(a) (2016).

Held: The Sixth Amendment guarantees a defendant the right to choose
the objective of his defense and to insist that his counsel refrain from
admitting guilt, even when counsel's experienced-based view is that
confessing guilt offers the defendant the best chance to avoid the death
penalty. Pp. 5–13. *McCoy v. Louisiana,* 584 US _ (2018).

In representing the Petitioner, Mr. DeMarco, expressed to the Court his
disagreement with his client theory of defense, (Add. 066) but after the
conference of October 11, 2017, where the Court noted that it was the
client's decision to make, *Id.* Mr. DeMarco and the Petitioner left the court
with the understanding that Mr. DeMarco would prepare a motion to
dismiss arguing that the underlying conviction was invalid and, therefore, an
exception to the registration requirement under §2250. To that effect, the
Petitioner prepared and emailed a letter (Dkt. 61) to his attorney outlining
support for the projected motion. Mr. DeMarco did not respond to the email
and without consulting with his client, on January 08, 2018 filed a letter
(Add.059-065) with the Court arguing that his client was not permitted to
challenge his underlying conviction. The Court misconstrued the letter as

6

having the defendant's approval and issued order canceling the briefing schedule that the Court had set for the pretrial motion to invalidate Defendant's prior conviction.

From his initial assignment until he was terminated, Mr. DeMarco did nothing but undermine his client's case as lead defense counsel and as standby counsel. His actions were in direct contrast with every ethical and professional capacity expected of a defense counsel and clearly constituted, as a minimum, ineffective assistance of counsel. The Petitioner asked the Court to replace Mr. DeMarco and the Court declined leaving the Petitioner with no other option than self-representation. (Add.057).

By refusing to assign new counsel in light of Mr. DeMarco's adversarial filing, the Court effectively denied assistance of counsel to the accused in violation of the Sixth Amendment.

> "When an indigent defendant is unable to retain his own lawyer, the trial judge's appointment of counsel is itself a critical stage of a criminal trial. At that point in the proceeding, by definition, the defendant has no lawyer to protect his interests and must rely entirely on the judge. For that reason it is "the solemn duty of a ... judge before whom a defendant appears without counsel to make a thorough inquiry and to take all steps necessary to insure the fullest protection of this constitutional right at every stage of the proceedings." *Von Moltke*, 332 U. S., at 722."

> *Mickens v. Taylor*, 535 U.S. 162, 184 (2002).

7

In addition to refusing to assign new counsel, the court erred by mandating Mr. DeMarco to stay on as standby counsel creating a conflict because he and the petitioner now had conflicting interests in the outcome of the motion to dismiss as Mr. DeMarco now had an interest in seeing petitioner fail. The court imposed Mr. DeMarco's presence on the petitioner without evaluating the significance of his actions and the conflict it raised. Instead, of admonishing Mr. DeMarco for opposing his client's stated interest, the judge stated that she agreed with his assessment in the letter ( Add. 054) praising his abilities without conducting a hearing in the matter and denying petitioner the right to be heard on the issue when petitioner tried to raise it. Add. 058.

The judge failed in her solemn duty. "It is the solemn duty of a federal judge before whom a defendant appears without counsel to make a thorough inquiry, and to take all steps necessary to insure the fullest protection of this constitutional right at every stage of the proceedings. *Johnson v. Zerbst,* 304 U.S. 458, 304 U.S. 463; *Hawk v. Olson*, 326 U.S. 271, 326 U.S. 278. This duty cannot be discharged as though it were a mere procedural formality." *Von Moltke v. Gillies*, 332 U. S. 708, 722 (1948).

A reasonable person would question Judge Caproni's impartiality.

**The judge's denial of petitioner's first motion to dismiss was evidence of bias.**

Judge Caproni's opinion pretends to be based on the Supreme Court's opinion in *Custis v. United States,* 511 U.S. 485 (1994*)*, but in fact it merely takes snippets of the opinion wholly out of context and spins a totally fake web of 'law' that no reasonable person could find credible.

**The Court's View of *Custis* was incorrect.**

The district court misinterpreted and unreasonably applied the Supreme Court's decision in *Custis.*

"Nothing in SORNA limits the statute's reach to procedurally sound convictions or otherwise authorizes collateral attacks on those convictions. See Delgado, 592 F. App'x at 603. As with the felon-in-possession laws, SORNA focuses only on "the fact of the [prior] conviction." Custis, 511 U.S. at 491. The procedural validity *vel non* of Diaz's prior conviction is thus not at issue in the instant prosecution, and Diaz may not use this proceeding to collaterally attack it." Add. 053.

"This Court has repeatedly ruled that he may not challenge the validity of his prior conviction in this proceeding. Although the Court understands that Mr. Diaz disagrees, those rulings are the law of the case and may not be

disobeyed. (Signed by Judge Valerie E. Caproni on 2/19/19)(jw) (Entered: 02/19/2019)." Add. 031.

Judge Caproni never specifically identified this oft-cited law of the case, even though petitioner asked. Add. 049. Petitioner can only conclude that the law was the *Custis* opinion.

The Court's denial of petitioner's motion to dismiss was a misapplication of *Custis*. That decision only applied to the Armed Career Criminal Act of 1984, 18 U. S. C. § 924(e):

> Held:
>
> 1. With the sole exception of convictions obtained in violation of the right to counsel, a defendant in a federal sentencing proceeding has no right to collaterally attack the validity of previous state convictions that are used to enhance his sentence **under the ACCA. Pp. 490-497.** (Emphasis added).
>
> Congress did not intend to permit collateral attacks on prior convictions **under § 924(e)**. The statute's language-which applies to a defendant who has "three previous convictions" of the type specified focuses on the fact of the conviction, and nothing therein suggests that the prior final conviction may be subject to attack for potential constitutional errors before it may be counted. That there is no implied right of collateral attack **under § 924(e)** is strongly supported by § 921(a)(20), which provides that a court may not count a conviction "which has been ... set aside" by the jurisdiction in which the proceedings were held, and thereby creates a clear negative implication that courts *may* count a conviction that has not been so set aside; by the contrast between § 924(e) and **other related statutes that expressly permit repeat offenders to challenge prior convictions that are used for enhancement purposes, see, e. g., 21 U. S. C. § 851(c)**; *Custis* at 485. (Emphasis added).
>
> We granted certiorari to determine whether a defendant **in a federal sentencing proceeding** may collaterally attack the validity of previous state convictions that are used to enhance his sentence under the ACCA. *Id* at 487. (Emphasis added).

We granted certiorari, 510 U. S. 913 (1993), because **the Court of Appeals' decision conflicted with recent decisions from other Courts of Appeals** that permitted defendants to challenge prior convictions that are used in sentencing under § 924(e)(1). *Id* 490. (Emphasis added).

Custis argues that the ACCA should be read to permit defendants to challenge the constitutionality of convictions used for sentencing purposes. **Looking to the language of the statute, we do not believe § 924(e)** authorizes such collateral attacks. *Id. (Emphasis added).*

Congress' passage of other related statutes that expressly permit repeat offenders to challenge prior convictions that are used for enhancement purposes supports this negative implication. For example, 21 U. S. C. § 851(c), which Congress enacted as part of the Comprehensive Drug Abuse Prevention and Control Act of 1970, **sets forth specific procedures allowing a defendant to challenge the validity of a prior conviction** used to enhance the sentence for a federal drug offense. *Id* at 491. (Emphasis added).

The language of §851(c) shows that **when Congress intended to authorize collateral attacks on prior convictions at the time of sentencing, it knew how to do so.** Congress' omission of similar language in § 924(e) indicates that it did not intend to give defendants the right to challenge the validity of prior convictions under this statute. . *Id* at 492. (Emphasis added).

This lack of such intent in § 1202(a)(1) also contrasted with other federal statutes that explicitly permitted a defendant to challenge the validity or constitutionality of the predicate felony. See, e. g., 18 U. S. C. § 3575(e) (note following ch. 227) (dangerous special offender) and 21 U. S. C. §851(c)(2) (recidivism under the Comprehensive Drug Abuse Prevention and Control Act of 1970). **The absence of expressed intent, and the contrast with other federal statutes, led us to determine that "the firearms prosecution [under § 1202(a)(1)] does not open the predicate conviction to a new form of collateral attack."** 445 U. S., at 67. (Emphasis added).

Similarly, **§ 924(e)** lacks any indication that Congress intended to permit collateral attacks on prior convictions used for sentence enhancement purposes. The **contrast between § 924(e) and statutes that expressly provide avenues for collateral attacks**, as well as our decision in Lewis, supra, point strongly to the conclusion that Congress did not intend to permit collateral attacks on prior convictions under § 924(e). . *Id* at 493. (Emphasis added).

11

> We therefore hold that *§ 924(e) does not permit Custis to use the federal sentencing forum to gain review of his state convictions.* *Id* at 497. (Emphasis added).

Right off the bat, the Supreme Court states that it granted certiorari because "the Court of Appeals' decision conflicted with recent decisions from other Courts of Appeals that permitted defendants to challenge prior convictions that are used in sentencing under § 924(e)(1)." *Custis* at 490. Furthermore, the Court noted that some statutes permit challenges to prior convictions, suggesting that the language of the statute is what determines whether a prior conviction can be challenged.

Every paragraph above suggests that the Supreme Court's findings applied only to § 924(e). This is because the Supreme Court only examined the language of § 924(e) and only considered how it applied to sentencing proceedings; they did not examine the language of SORNA and the implications on the trial phase of a SORNA prosecution. It was the obligation of the district court to look at the language of SORNA. Before reaching its conclusions, the Supreme Court looked to the language of § 924(e). If the district court intended to apply *Custis* in a fair process, it would have read the language of SORNA. The district court did not look at

the language of SORNA before making a ruling on petitioner's motion. It blindly adopted the findings in *Custis* and adopted them without reason.

If the court had read the SORNA statute, it would have learned that the language of SORNA *does* "limit the statute's reach to procedurally sound convictions." It explicitly lists as 'unqualifying' those convictions not obtained with sufficient safeguards for fundamental fairness and due process for the accused. See 34 U.S.C. § 20911(5)(B). This clearly signifies the intent of Congress with respect to unfair proceedings and due process; not that it should have ever been in doubt by any court since these are the intent of the Bill of Rights.

Although, this observation is made in reference to foreign convictions, it can hardly be argued that Congress intended to extend protection against fundamentally unfair trials and due process violations to foreigners and deny them to United States citizens. This is so, because every American is entitled to those protections under the United States Constitution. So, it makes sense that Congress would extend those protections to foreigners who may have lacked them during their trials. It does not make sense that Congress would allow foreign convictions to be challenged for fairness and deny the same to American citizens. Moreover, burrowing from *Custis:* If

13

Congress intended to deny the challenge of prior conviction in SORNA prosecution, "it knew how to do so." *Custis,* 511 U.S. At 492. The language of SORNA demonstrates that the statute is open to challenges of fundamentally unfair trials and due process violations and the petitioner due process rights were violated by the judge's rulings.

A reasonable person would question the judge's impartiality.

The right to challenge is also expressed in:

**First Amendment**

"Congress shall make no law … abridging … the right of the people … to petition the Government for a redress of grievances." … );

In spite of all the opinions and dicta about the propriety of challenges to prior convictions, no one has produced a statute that explicitly prohibits them. If so were the case, the statute would be unconstitutional and in violation of the Petition Clause.

**Federal Rule of Evidence 104(e)**

**Evidence Relevant to Weight and Credibility.** This rule does not limit a party's right to introduce before the jury evidence that is relevant to the weight or credibility of other evidence.

Although the judge made clear that the Federal Rules of Evidence must be followed. Add. 055.  Petitioner's rights under this rule were denied every time he invoked the rule. Unlike a sentencing proceeding like § 924(e), in a SORNA prosecution the prior conviction is an essential element of the offense and the trial phase of a SORNA case. Therefore, adherence to rule 104(e) is mandatory and not discretionary. The judge violated petitioner's due process.

**Supreme Court**

> "Persons, then, belonging to the army and the navy are not subject to illegal or irresponsible courts martial when the law for convening them and directing their proceedings of organization and for trial have been disregarded. In such cases, everything which may be done is void -- not voidable, but void -- and civil courts have never failed, upon a proper suit, to give a party redress, who has been injured by a void process or void judgment."

*Dynes v. Hoover,* 61 U.S. 65, 81 (1857).

"[T]he constitutional guarantee of due process is meaningful enough, and sufficiently adaptable, to protect soldiers -- as well as civilians -- from the crude injustices of a trial so conducted that it becomes bent on fixing guilt by dispensing with rudimentary fairness"

*Burns v. Wilson,* 346 US 137, 142 (1953).

15

The law is clear; the petitioner has the constitutional, statutory, and procedural rights to challenge a prior conviction when his life, liberty, or property is threatened by that conviction. It was deliberate and arbitrary error to deny the petitioner the opportunity to present a valid defense at trial.

**The judge denied petitioner's second motion to dismiss.**

The district court ordered a conference on February 20, 2019 to announce the appointment of a new defense counsel five days before trial.

Petitioner met new counsel and immediately notified counsel of his intention to file a motion to dismiss on grounds of improper venue and failure to state a crime. Petitioner stressed the importance of filing immediately because Rule 12 indicated motion must be filed before start of trial. Counsel took copy of motion and promised to review it, but they had a lot of documents to review before trial. Over the next three days, after many email exchanges and phone conversations it became apparent that counsel was not going to file the motion. On February 23, petitioner sent the motion directly to the Court via email. Add. 027-029.

The Court denied the motion noting that "Section 2250 phrases the "federal conviction" and "interstate commerce" theories of the offense in

terms of "or" indicating that the government may proceed under either one. That makes sense: If an unregistered sex offender travels in interstate commerce, the government has a federal interest in prosecuting him, regardless of whether he is a federal or state sex offender. I'm unaware of a case that directly addresses this issue, but in *United States v. Van Buren*, a federal sex offenders was prosecuted under the interstate travel theory; the Second Circuit affirmed the conviction albeit on other grounds, Van Buren is 599 F.3d at 170 (2d Cir. 2010)." Add. 024-026.

Of note here, is the judge assertion that "I'm unaware of a case that directly addresses this issue," because, *that was a lie.* Judge Caproni previously cited *Carr* in her denial of petitioner's first motion to dismiss.

> "As applied to Diaz, the elements of failure to register, pursuant to 18 U.S.C. § 2250, are that the defendant: (1) was required to register as a sex offender under SORNA; (2) is a "sex offender" by reason of a conviction under federal law (including under the Uniform Code of Military Justice); and (3) knowingly failed to register or update his registration. *See* 18 U.S.C. § 2250(a); *Carr v. United States*, 560 U.S. 438, 445–46 & n.3 (2010); 3 *Modern Federal Jury Instructions: Criminal* ¶ 61.10 (2018)."

Add. 051.

That lie is further accentuated by the repeated refusal to acknowledge and discuss the effect of *Carr* in petitioner's allegations and the refusal to allow petitioner to rebut her claims. Add. 026. Our litigation system's foundation is that truth "is best discovered by powerful statements on both

sides of the question," delivered through "partisan advocacy" that subjects the positions of both sides to "the crucible of meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 655-56 (1984).

Judge Caproni stated "I have to follow the law." "At trial the Rules of Criminal Procedure and Rules of Evidence have to be followed." Add. 055. But Judge Caproni did not follow the law impartially. She did not follow the law in *Carr*; she did not follow rule 104(e) of the Federal Rules of Evidence. She was selective of the laws she followed, discarding any law or argument favoring the petitioner. When petitioner invoked his right under rule 104(e) the judge response was "you are not going to pursue it in this trial unless the Second Circuit intervenes before the trial." Adding: "Which I don't think they are going to do." Add. 038.

A reasonable person would question the judge's impartiality.

**The Superseding Indictment Was Unlawful.**

> As relevant here, §2250 provides:
> "(a) IN GENERAL.—Whoever—
> "(1) is required to register under the Sex Offender Registration and Notification Act;
> "(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
> "(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

18

"(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act; "shall be fined under this title or imprisoned not more than 10 years, or both."

For a defendant to violate this provision, Carr and the Government agree, the statute's three elements must "be satisfied in sequence, culminating in a post-SORNA failure to register." Brief for United States 13; see also Reply Brief for Petitioner 4, 7, n. 6. A sequential reading, the parties recognize, helps to assure a nexus between a defendant's interstate travel and his failure to register as a sex offender. Persons convicted of sex offenses under state law who fail to register in their State of conviction would otherwise be subject to federal prosecution under §2250 even if they had not left the State after being convicted—an illogical result given the absence of any obvious federal interest in punishing such state offenders.

*Carr v. United States,* 560 U.S. 438, 443 (2010).

Had Congress intended to subject any unregistered state sex offender who has ever traveled in interstate commerce to federal prosecution under §2250, it easily could have adopted language to that effect. That it declined to do so indicates that Congress instead chose to handle federal and state sex offenders differently. There is nothing "anomal[ous]" about such a choice. To the contrary, it is entirely reasonable for Congress to have assigned the Federal Government a special role in ensuring compliance with SORNA's registration requirements by federal sex offenders—persons who typically would have spent time under federal criminal supervision. It is similarly reasonable for Congress to have given the States primary responsibility for supervising and ensuring compliance among state sex offenders and to have subjected such offenders to federal criminal liability only when, after SORNA's enactment, they use the channels of interstate commerce in evading a State's reach.

*Id* at 449.

Congress crafted §2250 to keep jurisdiction over federal offenders regardless of interstate travel and over state offenders only when they travel between states.

The government applied an irrelevant element (the interstate travel clause) to take advantage of the dichotomy created by the *United States v. Holcombe*, 883 F.3d 12 (2d Cir. 2018) decision, to dupe the jury into thinking that actual evidence of a crime was being presented, and to circumvent the petitioner's right to constitutionally proper venue. Add. 043.

In *Holcombe*, the Second Circuit affirmed the conviction in spite of the Supreme Court rulings in *Nichols v. United States,* 136 S. Ct. 1 113 (2016). The appeal court establish a distinction between the two cases by pointing to immaterial issues, such as, "We note, too, that Nichols did not address venue, and involved a defendant who was a federal sex offender, not, as here, a state sex offender. See 136 S. Ct. at 1116–17. A federal sex offender, unlike a state sex offender, does not need to travel interstate to commit a SORNA offense." *Holcombe* at 10. Ultimately, the court ended up relying in a number of cases that hardly supported its ruling because all of the cases cited preceded *Nichols*. *United States v. Kopp*, 778 F.3d 986, 988–89 (11th 3 Cir. 2015); *United States v. Lewis*, 768 F.3d 1086, 1092–94 (10th Cir. 2014); *United States v. Howell*, 552 F.3d 709, 717–18 (8th Cir. 2009). The *Nichols* ruling rendered all those cases irrelevant because *Nichols* represents a fresh interpretation of section 2250 and the SORNA

20

statute which establishes the *locus delicti* and it appears to address venue; the Seventh Circuit (*Haslage*), the District Court (Add. 045-046), the legal community (*supra*), etc., all appear to agree that the *Nichols'* opinion affects the issue of venue in SORNA prosecutions; see *United States v. Lange*, 834 F.3d 58, 68 (2d Cir. 2016) ("When a federal statute defining an offense does not specify how to determine where the crime was committed, the locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it." (quotation marks omitted) ). Whether venue is proper in a particular district turns on the elements of the underlying crime and where the acts satisfying those elements occurred.) See *Holcombe's* discussion on venue.

In *United States v. Haslage*, 853 F.3d 331 (7th Cir. 2017), the Seventh Circuit overrode its prior position because *Nichols* determined the locus delicti for SORNA prosecutions.

*Holcombe* turned out to be a controversial decision that prompted the legal community to the following conclusion:

> The Court's decision on venue gives new significance to the jurisdictional hook element of a SORNA offense involving a sex offender convicted under state law. For other federal crimes involving interstate travel – such as kidnapping in violation of the "Lindbergh Law" – there is little question that the core underlying offense occurred in both jurisdictions. Here, based on the Court's ruling, a defendant could be tried in the departure state even if when he stepped across state lines he had no plans to remain in the

arrival state, without re-registering, in violation of SORNA. The Court's discussion of *Nichols* also sets up the interesting parallel in that the departure state may be involved in the offense and a proper venue for a state-law convicted sex offender who travels across state lines without registering, but not for a federal-law convicted sex offender otherwise subject to the same registration requirements.

Although the Court's interpretation of the statute is tough to dispute, it does create a legal anomaly that is hard to rationalize from a policy perspective.

https://www.pbwt.com/second-circuit-blog/circuit-holds-that-interstate-travel-element-confers-multiple-venues-for-prosecution.

On November 16, 2018, the Court issued order, directing the government to address the effect of *Nichols v. United States,* 136 S. Ct. 1 113 (2016) on the case. The Court asked the government to:

1. In light of *Nichols*, the Government must explain why the indictment properly states an offense, given that it alleges that Mr. Diaz "changed his residence without updating his registered address in New York," (emphasis added). Add. 045.

2. The Government must also explain why venue is proper in this District, given that Nichols suggests that Mr. Diaz's alleged offense was his failure to report his change of residence to New Jersey and/or Virginia authorities, not New York authorities. The Government's explanation regarding venue should address *United States v. Holcombe*, 883 F.3d 12 (2d Cir. 2018), and the Court of Appeals decisions cited therein. *Id.*

The government explained that it had issued a superseding indictment where venue was now proper in the district because "[t]he original indictment in this case charged the defendant with being a "sex offender as defined for the purposes of [SORNA] by reason of a conviction under Federal law (including the Uniform Code of Military Justice)." See 18 U.S.C. § 2250(a)(2)(A). The superseding indictment now charges the defendant with traveling in interstate commerce. See id. § 2250(a)(2)(B)." Add. 046.

The Government failed to note that this was against the Supreme Court's ruling in *Carr v. United States,* 560 U.S. 438 (2010). The Government simply jurimandered a superseding indictment crafted to match the Second Circuit interpretation of 'interstate travel' in its *Holcombe* opinion and circumvent petitioner's constitutional rights to proper venue. All of which, the court readily accepted.

Since *Holcombe* determined that venue was proper in the departure state for state offenders and it appeared to exclude federal offenders, it was a simple question of (2)(B) or not (2)(B) for the government.

The Government's answer was disingenuous; we got away with it before in *Van Buren*, so we'll try it again. The government's explanations were

less than forthcoming. It omitted keys points in *Holcombe* directly on point to the issues of venue; federal vs. state offenders; interstate travel; and has been conspicuously silent on *Carr.* The court's take on all this, "oops, let me supersede." Add. 035.

The law is clear. By explicitly requiring sequential adherence to the statute, the law demands that federal offenders be charged only under 18 U.S.C. § 2250(a)(2)(A). "For a defendant to violate this provision, Carr and the Government agree, the statute's three elements must "be satisfied in sequence, culminating in a post-SORNA failure to register."" *Carr v. United States,* 560 U.S. at 443. Since the Government did not observe the sequential construct of the statute, the petitioner did not violate the provision of § 2250 and was unlawfully indicted and convicted.

A reasonable person would question the judge's impartiality.

**The judge denied petitioner's motion to obtain grand jury transcript.**

Petitioner's 2255 motion to vacate, (21-cv-2403), was assigned to Judge Caproni. Petitioner filed a motion to obtain grand jury transcript arguing that the transcript was needed to support the allegation that the indictment was unlawful and that the Government had committed fraud while knowingly arguing false evidence before the court. "It is as much his

duty [prosecutor's] to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88 (1935).

The judge denied the motion in a cursory opinion that further casts doubt on her impartiality and, as usual, foregoing any mention of the directly on-point Supreme Court decision in *Carr*. Add. 009-011.

The judge completely misses the concept of section 2255. The judge rejects the unlawful indictment argument because the court "previously considered and rejected these identical arguments." Add. 010.

The petitioner submitted the motion on February 23, 2019 and the court denied the motion two days later, on February 25, 2019. There was no response from the government and the petitioner was not allowed to argue it. The judge stated that she was unaware of any case addressing the subject (§2250) and, yet, she decided the issue relying on her "common sense." Add. 025. There is now evidence that *Carr v. United States,* 540 U.S. 438 (2010) directly addresses the subject and it prove the judge's conclusions clearly erroneous. This is the type of issue for which the collateral attacks under 28 U.S.C. 2255 is intended. If the judge is not going to review the

issues raised under section 2255 because she'd already decided them at trial, the 2255 is pointless.

**The judge denied petitioner's motion to disqualify herself.**

Petitioner moved to disqualify the trial judge under 28 U.S.C. § 455(a) on the grounds that multiple aspects of the court's Order and comments evinced prejudgment and partiality for the reasons explained above including the clearly erroneous conclusion described above and the fact that she was not truthful when stating she was unaware of the *Carr* opinion above. Add. 001-007.

**The trial judge denies the motion in a cursory opinion that casts further doubt on her impartiality.**

The trial judge denied Petitioners' motion by simply stating that "[p]laintiff states no facts suggesting that the undersigned "displayed a deep-seated favoritism or antagonism that would make fair judgment impossible." Petitioner stated the same facts that have been raised here about *Carr* and the indictment, and again, the judge was silent about it. Add. 009

## REASONS FOR GRANTING THE WRIT

28 U.S.C. § 455(a) requires recusal if a reasonable person, knowing all the pertinent facts, would question a trial judge's impartiality. That standard is satisfied here.

A reasonable observer, aware of the judge's comments and order, would question her impartiality. Accordingly, the Court should grant the petition and order that this case be assigned to a different judge on remand.

**Recusal**

"Title 28, United States Code, section 455(a) provides that '[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.'" *Ligon v. City of New York*, 736 F.3d 118, 123 (2d Cir. 2013), vacated in part, 743 F.3d 362 (2d Cir. 2014) (per curiam). "This statute embodies the principle that to perform its high function in the best way justice must satisfy the appearance of justice." *Id.* "Notably, under § 455(a), recusal is not limited to cases of actual bias; rather, the statute requires that a judge recuse himself whenever an objective, informed observer could reasonably question the judge's impartiality, regardless of whether he is actually partial or biased." *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000). On review, a court of appeals must ask the following question: Would a reasonable person, knowing all the facts, conclude that the trial judge's impartiality could reasonably be questioned? Or phrased differently, would an objective, disinterested observer fully

informed of the underlying facts, entertain significant doubt that justice would be done absent recusal? *Id.*

Recusal can be based on a single statement or conversation; no pattern is necessary to create this sort of doubt. *United States v. Antar*, 53 F.3d 568, 576 (3d Cir. 1995). This "standard is designed to promote public confidence in the impartiality of the judicial process." *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988). "And as other circuits have correctly noted, if the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of recusal." *Ligon*, 736 F.3d at 124.

**Mandamus**

"The common-law writ of mandamus is codified in the All Writs Act." *In re United States v. Manzano*, 945 F.3d 616, 622 (2d Cir. 2019). The writ has three conditions. *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004). "First, the party seeking issuance of the writ must have no other adequate means to attain the relief he desires." *Id.* At 380–81 . "Second, the petitioner must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable." *Id.* At 381 . "Third, . . . the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.*

"These hurdles, however demanding, are not insuperable." *Id.* "This court has long since taken the position that there are 'few situations more appropriate for mandamus than a judge's clearly wrongful refusal to disqualify himself.'" *In re Int'l Bus. Machines Corp.*, 618 F.2d 923, 926 (2d Cir. 1980) (quotation omitted) ("*IBM I*").

**The trial court's statements and Order so seriously compromised the appearance of impartiality that recusal was required under 28 U.S.C. § 455(a).**

The Orders of the trial court violated petitioner's constitutional rights and were so arbitrary, irrational, and against established precedent as to raise severe doubts about the trial court's impartiality in the process.

After hearing them, any reasonable observer must entertain significant doubts that petitioner can obtain an impartial hearing of his claims and theories before this judge.

This Court has noted that "[r]eassigning a case to a different district judge, while not an everyday occurrence, is not unusual in this Circuit. *Ligon*, 736 F.3d at 128. "Nor is reassigning a case to a different district judge an unusual occurrence in [the Court's] sister Circuits." *Id.* "Indeed . . . reassignment is simply a mechanism that allows the courts to ensure that

cases are decided by judges without even an appearance of partiality." *Id.* at 128–29.

**Petitioner has no other adequate means of relief.**

The first prong of the Cheney test for grant of mandamus asks whether there is any other adequate relief—in most cases, a later appeal. *Cheney*, 542 U.S. At 380–381.

"A claim of personal bias and prejudice strikes at the integrity of the judicial process, and it would be intolerable to hold that the disclaimer of prejudice by the very jurist who is accused of harboring it should itself terminate the inquiry until an ultimate appeal on the merits." *IBM I*, 618 F.2d at 926–27. Indeed, it is "for just such an exceptional circumstance that the writ was designed." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1025 (9th Cir. 1981); accord *In re Aetna Cas. & Sur. Co.*, 919 F.2d 1136, 1142 (6th Cir. 1990) (adopting the "unanimous view on this question . . . that 'mandamus is the proper remedy to vacate the orders of a judge who acted when he should have recused'") (quoting *Moody v. Simmons*, 858 F.2d 137, 143 (3d Cir.1988)).

Further, all the circuits agree that "motions to disqualify for an appearance of bias . . . are suitable for mandamus review because the public

injury that arises from an appearance of bias cannot be cured on appeal from a final judgment." Mandamus Use in Civil Action— Disqualification Orders, 16 FED. PRAC. & PROC. JURIS. § 3935.5 (3d ed.). "In addressing the mere appearance of partiality, section 455 addresses not only fairness to the litigants but also the public's confidence in the judiciary," and that confidence "may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted." *In re Sch. Asbestos Litig.*, 977 F.2d 764, 776 (3d Cir. 1992), as amended (Oct. 23, 1992). "While review after final judgment can (at a cost) cure the harm to a litigant, it cannot cure the additional, separable harm to public confidence that section 455 is designed to prevent." *Id.*

**The propriety of disqualification is clear from the facts.**

The second Cheney factor asks whether the right to issuance of the writ is "clear and indisputable." *Cheney*, 542 U.S. at 381. The "ultimate question is simply whether, bearing in mind the exceptional nature of mandamus," the Court is "left with the 'firm conviction' that the district court's view of the law was incorrect." *Manzano*, 945 F.3d at 625, as was the judge's view of *Custis v. United States,* 511 U.S. 485 (1994), Rule 104(e), and her inability

to face *Carr v. United States,* 540 U.S. 438 _ (2010) and discuss its effect

on her decision and resulting lies.

The judges's actions in this case leave no doubt that the petitioner was

deliberately and arbitrarily, denied due process and the protection of the law

where there was no room for discretion. As the judge pointed out; she must

follow the law and the Federal Rules of Evidence. In this case the law is

*Carr v. United States,* 540 U.S. 438 (2010); 34 U.S.C. § 20911(5)(B); and

Rule 104(e).

For a judge that openly stated on the record that she would only

change her ruling if the appeals court intervenes, (Add. 037-038) Judge

Caproni should have recused herself, *sua sponte.* It is clear that she cannot

be impartial in a 2255 proceeding challenging her own decisions at the trial

where nearly all the petitioner's allegations were attributed to the judge's

bias. If there were any doubts, she removed them with her denial of the

motion to obtain grand jury transcript and her refusal to recuse herself.

**Mandamus is appropriate under the circumstances.**

"We can think of few situations more appropriate for mandamus than a

judge's clearly wrongful refusal to disqualify himself." *Rosen v. Sugarman,*

357 F.2d 794, 797 (2d. Cir. 1966).

Consider this: *Carr v. United States,* 540 U.S. 438 (2010) directly addresses how charges must be preferred under section 2250 and the judge made reference to this case in her opinion (Add. 051) prior to the superseding indictment. *Carr* even addresses the reasons why section 2250 must be applied sequentially. *Supra.*

Following the superseding indictment, which runs afoul of the *Carr* opinion, both the judge and the Government developed amnesia with respect to *Carr.* Both have gone silent on the case and have not responded to any of the petitioner's repeated references to it. Coincidence or conspiracy?

The judge went as far as stating some conspicuously coy quips: "Section 2250 phrases the "federal conviction" and "interstate commerce" theories of the offense in terms of "or" indicating that the government may proceed under either one. ***That makes sense:*** If an unregistered sex offender travels in interstate commerce, the government has a federal interest in prosecuting him, regardless of whether he is a federal or state sex offender. ***I'm unaware of a case that directly addresses this issue***, but in *United States v. Van Buren*, a federal sex ofender was prosecuted under the interstate travel theory." Add. 019-020. (Emphasis added).

What "makes sense" to Judge Caproni produces "illogical result" (*Carr* at 443) in the Supreme Court's view. The judge disregard for the law, fundamental fairness, and due process are evident from the record.

Mandamus is more than appropriate here; it's a necessity.

## CONCLUSION

For the reasons set forth above, this Court should issue a writ of mandamus directing the trial judge to recuse herself from this case and for the case to be reassigned to a different judge.

Dated: October 9, 2021

Respectfully submitted,

Salvador Diaz, Petitioner
P. O. Box 151
Horntown, VA 23395
(347) 344-6571
sal13diaz@hotmail.com

34

## CERTIFICATE OF SERVICE

I certify that on October 11, 2021, this petition and the accompanying addendum were sent via U.S. Postal Service to the Clerk of the Second Circuit Court of Appeals. One copy to United States District Judge Valerie Caproni at 40 Foley Square, Room 240, New York, NY 10007. And, one copy to United States Assistant District Attorney Daniel George Nessim at One St. Andrew Plaza, New York, NY 10007 via uU. S. Postal Service, which will satisfy service on all parties.

Salvador Diaz

Dated: October 11, 2021

# CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. R. 21(d)(1) because, excluding the portions exempted by Fed. R. App. R. 21(a)(2)(C)

[X] this brief contains 7,547 words

[  ] this brief uses monospaced type and contains [   ] lines

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because

[X] this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font; or

[  ] this brief or other document has been prepared in a monospaced typeface using [   ] in [   ].

Salvador Diaz, Pro Se

Dated: October 09, 2021

# ADDENDUM

**MEMO ENDORSED**

RECEIVED
SDNY PRO SE OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/15/2021

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 21-CV-2403 (VEC) |
| -vs- | ) | 17-CR-0227 (VEC) |
| | ) | |
| SALVADOR DIAZ, | ) | |
| | ) | |
| Movant. | ) | |

## MOTION TO DISQUALIFY DISTRICT JUDGE

Now comes the Movant, Salvador Diaz, *pro se*, and hereby moves the Judge Valerie E.

Caproni to disqualify herself from the instant proceedings pursuant to 28 U.S.C. §455.

### BACKGROUND

This case is now before this Court on movant's §2255 motion to vacate following

conviction before Judge Caproni (17-cr-0227). Movant unsuccessfully appealed before the

Second Circuit Court of Appeals (19-1895).

Movant's motion to vacate alleges:

1. Denial of effective assistance of counsel

2. He was subjected to a defective, unlawful indictment.

3. Denial of right to present evidence at trial

4. He was tried in an improper venue

Movant moved for disclosure of grand jury transcript as evidentiary material in

connection with his allegation of defective, unlawful indictment. The Court denied the motion

noting among others that:

Addendum 001

1. "Specifically, Mr. Diaz asserts that the indictment fails to state an offense and that venue was not proper in the Southern District of New York." *Order* at 2.

2. "Finally, to the extent Mr. Diaz is arguing that the prosecutors engaged in misconduct when they appeared before the grand jury... Mr. Diaz has failed to make any "specific factual allegations of government misconduct."" *Id.*

3. "Absent any "basis to conclude that an impropriety or defect exists," this Court will not allow Mr. Diaz access to the grand jury record." *Id.*

## DISCUSSION

28 U.S.C. § 455 provides:

> Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

In light of the Court's denial of movant's motion to obtain grand jury transcript, 21-cv-02403-VEC, Document 16. (Order), it is painfully evident that the movant will not be afforded a fair review of his allegations by Judge Caproni.

"'[A] judge must recuse [herself] if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality.'" *United States v. Hartsel*, 199 F.3d 812, 820 (6th Cir. 1999) (quoting *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir.1990)).

"There cannot even be the semblance of a full and fair hearing unless the state court actually reached and decided the issues of fact tendered by the defendant." *Townsend v. Sain*, 372 U.S. 293, 313-314 (1963).

                    Addendum 002

In the present case there is no need to find a "reasonable, objective person," as the Supreme Court notes unless the court actually reaches the issues of facts tendered there is no fair hearing.

The Court denied the movant's motion to obtain the grand jury transcript noting that:

**1. "Specifically, Mr. Diaz asserts that the indictment fails to state an offense and that venue was not proper in the Southern District of New York." *Order* at 2.**

Mr. Diaz central assertion is that the indictment was unlawful and against the law of the United States and the intent of Congress as specifically noted by the Supreme Court in *Carr v. United States,* 560 U.S. 438 (2010). Document 15, (Reply) at 5. The indictment was fatally flawed. "An indictment must set forth each element of the crime that it charges." *Almendarez-Torres v. United States*, <u>523 U. S. 224</u>, 228 (1998). Because the Constitution requires that a defendant be charged with all essential elements of the offense, Diaz's indictment under 18 U.S.C. § 2250(a)(2)(A) must allege that he "is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States."

In *Hamling*, the Supreme Court identified two constitutional requirements for an indictment: "first, [that it] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, [that it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." 418 U. S., at 117. *Hamling v. United States*, <u>418 U. S. 87</u>, 119 (1974). By omitting the mandatory jurisdictional element (2)(A) the government could potentially charge Diaz for the same offense.

Addendum 003

Judge Caproni intentionally redirects the focus of the allegation from "defective, unlawful indictment" to "failure to state an offense and improper venue." Judge Caproni does this because at trial, she dismissed a motion for failure to state an offense and improper venue. The judge dismissed the motion finding that the arguments were "meritless. Section 2250 phrases the "federal conviction" and "interstate commerce" theories of the offense in terms of "or" indicating that the government may proceed under either one. That makes sense: If an unregistered sex offender travels in interstate commerce, the government has a federal interest in prosecuting him, regardless he is a federal or state sex offender. I'm unaware of a case that directly addresses this issue." 17-cr-227, Document 146 at 20. Diaz asked to reply but was not allowed by the Court. "No. You submitted your motion and I've ruled on that. We're not going to argue it." *Id* at 21.

This in the typical arbitrary, perfunctory manner reserved for indigent, *pro se* defendants; never observed when addressing prosecutors.

The judge's unusual comment that she was "unaware" of a case directly addressing the issue is very suspect. Not only because it shows a judge deciding an issue without adequate research, but, *Carr v. United States*, 560 U.S. 438 (2010), is cite in *United States v. Holcombe*, 883 F.3d 12 (2d Cir. 2018) at 18, and more importantly by Judge Caproni, herself, when denying Diaz's pre-trial motion. "As applied to Diaz, the elements of failure to register, pursuant to 18 U.S.C. § 2250, are that the defendant: (1) was required to register as a sex offender under SORNA; (2) is a "sex offender" by reason of a conviction under federal law (including under the Uniform Code of Military Justice); and (3) knowingly failed to register or update his registration. *See* 18 U.S.C. § 2250(a); *Carr v. United States,* 560 U.S. 438, 445-46 & n.3 (2010)." 17-cr-227, Document 71 at 6.

Addendum 004

So, the plain and simple truth about Judge Caproni declaration that she was not aware of a case directly addressing the issue is that it was a lie.

It seems unusual for a judge to rule on a motion while admitting to be "unaware of a case that addresses" the issue to be decided and at the same time deny a party involved the right to present evidence. It is, therefore, not surprising to find the same judge evade discussion of a case that "directly addresses" the issue when presented by the movant. Particularly, when that case is a from a binding authority and directly contradicts the judges decision.

This is trespassing of the movant's constitutional rights and fraud by the prosecutors and the judge who not only do not reach and decide "the issues of fact tendered by the defendant," but mislead the public with specious rulings.

Without a doubt, a reasonable, objective person, knowing all of the circumstances, will question the judge's impartiality.

**2. "Finally, to the extent Mr. Diaz is arguing that the prosecutors engaged in misconduct when they appeared before the grand jury... Mr. Diaz has failed to make any "specific factual allegations of government misconduct."" *Id.***

> "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed he should do so. But while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88 (1935).

Mr. Diaz asserted the government misconduct as the act of repeatedly and knowingly presenting false argument to the court that federal offenders can be charged under the interstate

travel clause (Reply at 5-6). The government and Judge Caproni are aware of the provisions of *Carr* with respect to the form of charges under 18 U.S.C. § 2250. Yet, both, as if by agreement, have failed to recognize this argument presented by Diaz. In fact, falsely denying Diaz has made the allegations.

### 3. "Absent any "basis to conclude that an impropriety or defect exists," this Court will not allow Mr. Diaz access to the grand jury record." *Id.*

There is basis to conclude that impropriety *and* defect exist. The entire Reply brief provides the basis which would allow an impartial court to reach the conclusion that improprieties and defects were present. That Judge Caproni should conclude that there is no such basis, is indicative of the presence of bias in her judgment and why the judge should disqualify herself from the proceedings.

## CONCLUSION

This is by no means a full narrative of the instances of bias in the many pre-trial conferences leading up to the trial. The court's bias deprived Diaz of his right to Due Process at every opportunity. He invoked claims of rights under the Petition Clause of the First Amendment, Rule 104(e) in the Federal Rules of Evidence, the language of the statute (Qualifying convictions consist only of those "obtained with sufficient safeguards for fundamental fairness and due process of the accused."), right to counsel, etc. AT every instance, the court applied an unreasonably narrow definition or was completely silent on the allegations. Conversely, every allegation against Diaz was unconditionally accepted by the court without any attempt to verify.

It would be impractical to detail each instance of bias and denial of Due Process in this document. However, in the spirit of the law, a reasonable, objective person, knowing all of the

Addendum 006

circumstances, should be afforded the opportunity to assess the judge's impartiality. To that end

the movant proposes an open hearing with participants from NYU, Fordham, and Columbia

schools of law (staff and students), where the movant will read from the record and allow those

participants to decide the judge's fairness.

Dated: 09/11/2021

Respectfully submitted,

Salvador Diaz
P. O. Box 151
Horntown, VA 23395
(347) 344-6571
sal13diaz@hotmail.com

Addendum 007

Plaintiff requests that the Court recuse herself based on the Court's denial of Plaintiff's motion to obtain the transcript from his grand jury indictment. *See* Dkt. 179. Plaintiff's request is DENIED.

A judge is required to recuse herself from "any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). When a judge's impartiality is questioned on bias or prejudice grounds, "what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994). That is, recusal is warranted if "an objective, disinterested observer fully informed of the underlying facts . . . entertain significant doubt that justice would be done absent recusal." *United States v. Yousef*, 327 F.3d 56, 169 (2d Cir. 2003) (internal quotation marks and citation omitted).

The showing of personal bias to warrant recusal must ordinarily be based on "extrajudicial conduct . . . not conduct which arises in a judicial context." *Lewis v. Tuscan Dairy Farms, Inc.*, 25 F.3d 1138, 1141 (2d Cir. 1994) (internal quotation marks and citation omitted). And "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555 (citation omitted); *see Fulton v. Robinson*, 289 F.3d 188, 199 (2d Cir. 2002) (affirming denial of recusal motion filed in case by plaintiff where judge had ruled against him on all his motions and where plaintiff had "speculated that the judge may have been acquainted with [him]").

Plaintiff states no facts suggesting that the undersigned "displayed a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. Any reasonable and objective observer would perceive Plaintiff's dissatisfaction only with the Court's rulings.

As there is no need for the undersigned to recuse herself from this action, the Court denies Plaintiff's motion seeking her recusal.

SO ORDERED.

*Valerie Caproni*                    9/15/2021

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/3/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SALVADOR DIAZ,

                     Movant,

       -against-

UNITED STATES OF AMERICA,

                     Respondent.

---

21-CV-2403 (VEC)

17-CR-0227 (VEC)

ORDER

VALERIE CAPRONI, United States District Judge:

       WHEREAS on April 6, 2021, Mr. Diaz, proceeding *pro se,* filed a motion to obtain the

grand jury transcript relating to the Superseding Indictment returned in *United States v. Salvador*

*Diaz*, 17-CR-0227 (VEC) (Dkt. 163);

       WHEREAS on July 26, 2021, the Government opposed the motion (Dkt. 174);

       WHEREAS on August 4, 2021, Mr. Diaz filed a reply (Dkt. 178);

       IT IS HEREBY ORDERED THAT: Mr. Diaz's motion to obtain the grand jury transcript

is DENIED. Grand jury proceedings carry a presumption of regularity, secrecy, and closure. *See*

*In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996). A defendant may overcome the

strong presumption of grand jury regularity and secrecy only through a strong showing of

"particularized need that outweighs the need for secrecy." *United States v. Moten*, 582 F.2d 654,

662 (2d Cir. 1978) (internal quotations omitted). Parties may make such a showing by "proving

'that the material they seek is needed to avoid a possible injustice in another judicial proceeding,

that the need for disclosure is greater than the need for continued secrecy, and that their request is

structured to cover only material so needed.'" *In re Grand Jury Subpoena*, 103 F.3d at 239

(quoting *Douglas Oil Co. of Cal. v. Petrol Stops Nw*, 441 U.S. 211, 222 (1979)).

1

Mr. Diaz has failed to make the strong showing of particularized need required to

overcome the presumption of grand jury secrecy.  Mr. Diaz argues that he "has a significant

interest in obtaining the grand jury transcript in order to demonstrate the unlawfulness of his

indictment." Dkt. 163 at 3-4.  Specifically, Mr. Diaz asserts that the indictment fails to state an

offense and that venue was not proper in the Southern District of New York.  *Id.*; Dkt. 178 at 7-8.

Putting aside the fact that the grand jury transcript is not necessary to make either argument, this

Court has previously considered and rejected these identical arguments, Dkt. 146 at 19-21;

*United States v. Diaz,* 967 F. 3d 107, 111 n.4 (2d Cir. 2020), and Mr. Diaz has failed to

demonstrate how the contents of the grand jury transcript would alter that ruling.  Moreover, any

renewed motion to dismiss the indictment would be untimely.  Under Federal Rule of Criminal

Procedure 12(b)(3), motions to dismiss an indictment for failure to state an offense or improper

venue and motions alleging error in grand jury proceedings must be made before trial "if the

basis for the motion is then reasonably available and the motion can be determined without a trial

on the merits."  Because all of Mr. Diaz's proffered arguments were available to him before trial,

any motion to dismiss is untimely.

Finally, to the extent Mr. Diaz is arguing that the prosecutors engaged in misconduct

when they appeared before the grand jury to seek the Superseding Indictment, Mr. Diaz has

failed to make any "specific factual allegations of government misconduct." *See United States v.*

*Torres*, 901 F.2d 205, 233 (2d Cir. 1990) ("A review of grand jury minutes is rarely permitted

without specific factual allegations of government misconduct.").  Absent any "basis to conclude

that an impropriety or defect exists," this Court will not allow Mr. Diaz access to the grand jury

records. *See United States v. Faltine*, No. 13-CR-315, 2014 WL 4370811, at *5 (E.D.N.Y. Sept.

2, 2014) (noting "a defendant is not routinely entitled to grand jury [records] in order to engage

in a fishing expedition in hopes of uncovering an impropriety or defect in the proceeding where he has no basis to conclude that an impropriety or defect exists"); *United States v. Stern,* No. 03-CR-81, 2003 WL 22743897, at *3 (S.D.N.Y. Nov. 30, 2003) ("[A]bsent any indication of government impropriety that would defeat that presumption [of regularity] …, this court has no roving commission to inspect grand jury minutes, and will not fashion one.") (internal citation omitted).

For the foregoing reasons, Mr. Diaz's motion to obtain the grand jury records is DENIED. Mr. Diaz's reply in support of his habeas petition is due **October 1, 2021.**

The Clerk of Court is directed to mail a copy of this order to Mr. Diaz.

SO ORDERED.

Dated:   September 3, 2021
         New York, New York

_____
**VALERIE CAPRONI**
**United States District Judge**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO.  21-CV-2403 (VEC) |
| -vs- | ) | 17-CR-0227 (VEC) |
| | ) | |
| SALVADOR DIAZ, | ) | |
| | ) | |
| Movant. | ) | |

## REPLY IN SUPPORT OF MOTION TO OBTAIN GRAND JURY TRANSCRIPTS

RECEIVED
SDNY PRO SE OFFICE

**REPLY**

**Background**

On November 16, 2018, the Court issued order, directing the government to respond addressing the effect of *Nichols v. United States,* 136 S. Ct. 1 113 (2016) on the case. The Court asked the government to explain why, in light of *Nichols*, the indictment properly stated an offense; and why venue was proper in the Southern District of New York while considering the Second Circuit decision in *United States v. Holcombe,* 883 F.3d 12 (2d Cir. 2018). (Dkt. 96).

In its response, on November 19, 2018, the government explained that it had issued a superseding indictment where venue was now proper in the district because "[t]he original indictment in this case charged the defendant with being a "sex offender as defined for the purposes of [SORNA] by reason of a conviction under Federal law (including the Uniform Code of Military Justice)." See 18 U.S.C. § 2250(a)(2)(A). The superseding indictment now charges the defendant with traveling in interstate commerce. See id. § 2250(a)(2)(B)." (Dkt. 99 at 2).

The movant, who was a *pro se* defendant at the time, appeared before the district court on 20 November 2018. Here, he was informed that the Government had filed a superseding indictment the previous day. (Dkt. 117 at 2). Considering that movant had traveled nearly 300 miles the previous day from his residence in Horntown, VA in order to be on time for his court appearance on the morning of the 20th, and that the superseding indictment and two other motions had been filed on the 19th, the movant had not seen these filings and was completely in the dark as to the their content.

The Court briefly attempted to explain what the Government had done:

THE COURT: Do you understand that theory, their argument on this?

THE DEFENDANT: Vaguely. Once I get -- all of that is in the motion, right?

2

THE COURT: Not this. This aspect wasn't really briefed. This was when the Court issued an order last week asking for an explanation from the government. Their explanation was, oops, let me supersede. So they changed the theory of the indictment.

THE DEFENDANT: Can they do that?

THE COURT: Yes. They have done that. You can move to dismiss, but I don't recommend it. Yes, they went back to the grand jury, they asked the grand jury for a new indictment. That's the indictment we will be proceeding on, is the one that's called the superseding indictment.

Dkt. 117 at 12-13.

The Court instructed movant to file motion or he would waive rights. Movant did not file by prescribed time because he did not have a reasonable basis for the motion available. Rule 12(b)(3).

It was not until after the February 15, 2019 conference that movant finally had a reasonable basis for the motion available. The movant was ready to file the motion when the Court announced a conference on February 20 to appoint new defense counsel. In meeting with new counsel, movant raised the issue of the motion, but counsel was too preoccupied with all the material to review due to trial only four days away and did not take issue seriously. After two days of back and forth emails and phone calls, movant realized he had to file on his own and did.

On the first day of trial, the Court summarily dismissed the motion citing waiver and lack of merits. Noting that "Section 2250 phrases the "federal conviction" and "interstate commerce" theories of the offense in terms of "or" indicating that the government may proceed under either one. That makes sense: If an unregistered sex offender travels in interstate commerce, the government has a federal interest in prosecuting him, regardless of whether he is a federal or state sex offender. I'm unaware of a case that directly addresses this issue, but in *United States v.*

*Van Buren*, a federal sex offenders was prosecuted under the interstate travel theory; the Second

Circuit affirmed the conviction albeit on other grounds, Van Buren is 599 F.3d at 170 (2d Cir.

2010)." (Dkt. 146 at 19, 20).

Movant's request to address the Court on the subject was denied. Dkt. 146 at 21.

The movant felt defense counsel were not prepared to represent him and elected to continue

on his own and was, again, permitted to continue *pro se.*

On February 27, 2019, the movant was found guilty as charged.

## The Misconduct

"The United States Attorney is the representative not of an ordinary party to a
controversy, but of a sovereignty whose obligation to govern impartially is as
compelling as its obligation to govern at all; and whose interest, therefore, in a
criminal prosecution is not that it shall win a case, but that justice shall be done.
As such, he is in a peculiar and very definite sense the servant of the law, the
twofold aim of which is that guilt shall not escape or innocence suffer. He may
prosecute with earnestness and vigor-indeed he should do so. But while he may
strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to
refrain from improper methods calculated to produce a wrongful conviction as it
is to use every legitimate means to bring about a just one." *Berger v. United
States*, 295 U.S. 78, 88 (1935).

## The Superseding Indictment Was Unlawful.

### Law of the Case

As relevant here, §2250 provides:
"(a) IN GENERAL.—-Whoever—
"(1) is required to register under the Sex Offender Registration and Notification Act;
"(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and
Notification Act by reason of a conviction under Federal law (including the Uniform
Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the
law of any territory or possession of the United States; or
"(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian
country; and
"(3) knowingly fails to register or update a registration as required by the Sex Offender
Registration and Notification Act; "shall be fined under this title or imprisoned not more
than 10 years, or both."
For a defendant to violate this provision, Carr and the Government agree, the statute's
three elements must "be satisfied in sequence, culminating in a post-SORNA failure to
register." Brief for United States 13; see also Reply Brief for Petitioner 4, 7, n. 6. A

sequential reading, the parties recognize, helps to assure a nexus between a defendant's interstate travel and his failure to register as a sex offender. Persons convicted of sex offenses under state law who fail to register in their State of conviction would otherwise be subject to federal prosecution under §2250 even if they had not left the State after being convicted—an illogical result given the absence of any obvious federal interest in punishing such state offenders.

*Carr v. United States*, 560 U.S. 438, 443  (2010).

Had Congress intended to subject any unregistered state sex offender who has ever traveled in interstate commerce to federal prosecution under §2250, it easily could have adopted language to that effect. *That it declined to do so indicates that Congress instead chose to handle federal and state sex offenders differently*.  There is nothing "anomal[ous]" about such a choice.  To the contrary, it is entirely reasonable for Congress to have assigned the Federal Government a special role in ensuring compliance with SORNA's registration requirements by federal sex offenders—persons who typically would have spent time under federal criminal supervision. It is similarly reasonable for Congress to have given the States primary responsibility for supervising and ensuring compliance among state sex offenders and to have subjected such offenders to federal criminal liability only when, after SORNA's enactment, they use the channels of interstate commerce in evading a State's reach.

*Id* at 449. (Emphasis added).

## Discussion

The Government has been aware of the Supreme Court's rulings and findings with respect to charges under 18 U.S.C. § 2250 for some time. Clearly, the Government then knows that charging a federal offender under the interstate travel clause is contrary to Congress' intentions and Supreme Court's findings. Yet, the Government continues to present false arguments to this Court pretending *Carr* does not exist; "SORNA specifically states that a sex offender can be prosecuted based on two theories—by virtue of a federal conviction "or" by traveling in interstate commerce." 17 cr. 227 (Dkt. 164 at 18, 19). That argument is belied by *Carr v. United States*, 560 U.S. 438, 443 (2010). Similarly, the Government insists on arguing that because it was done before, it can be done again, citing *United States v. Van* Buren, 599 F.3d 170 (2d Cir. 2010) in support of its argument that federal offenders can be charged under the interstate travel clause; a meritless argument in light of Carr, and the fact that the question is not whether

someone else was victimized in the same way before; the question is whether it is unlawful to charge a federal offender under the interstate travel clause. Not only does the Government knowingly continue to utter false arguments, but also it avoids any reference to *Carr* in its filings. Throughout this time, the Government has pretended not to be aware of *Carr* and its implications on this case. This is textbook prosecutorial misconduct. See ABA Model Rules of Professional Conduct Rule 3.8(g): Special Responsibilities of a Prosecutor. Instead of facing the correct standard of review, the Government is trying to persuade the courts to rely on previous errors while trying to suppress the correct, on-point, Supreme Court's rulings.

Moreover, the government overlooks that when a federal statute defining an offense does not specify how to determine where the crime was committed, the *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it. *Holcombe* at 18. (citation omitted). This is exactly what *Nichols* resolved. It tells us exactly where the crime is in SORNA cases.

On November 16, 2018, the Court issued order, directing the government to address the effect of *Nichols v. United States,* 136 S. Ct. 1 113 (2016) on the case. The Court ordered the government to:

1. In light of *Nichols*, the Government must explain why the indictment properly states an offense, given that it alleges that Mr. Diaz "changed his residence without updating his registered address in New York," Dkt. 12 (emphasis added).

2. The Government must also explain why venue is proper in this District, given that Nichols suggests that Mr. Diaz's alleged offense was his failure to report his change of residence to New Jersey and/or Virginia authorities, not New York authorities. The Government's explanation

Addendum 017

regarding venue should address *United States v. Holcombe*, 883 F.3d 12 (2d Cir. 2018), and the Court of Appeals decisions cited therein. Dkt. 96.

In its response, the government explained that it had issued a superseding indictment where venue was now proper in the district because "[t]he original indictment in this case charged the defendant with being a "sex offender as defined for the purposes of [SORNA] by reason of a conviction under Federal law (including the Uniform Code of Military Justice)." See 18 U.S.C. § 2250(a)(2)(A). The superseding indictment now charges the defendant with traveling in interstate commerce. See id. § 2250(a)(2)(B)." Dkt. 99 at 2.

The Government did not explain why the new indictment properly states an offense.

The Government's answer suggests that it accepted the Court's take that New York was not the proper venue. But, instead of referring the case to the proper venue, the Government decided to be creative with the law. The Government's discussion of venue and *Holcombe* conveniently omitted the *Holcombe*'s distinction between state and federal offenders. "[W]e think that interstate travel is an element of a SORNA offense where, as here, the defendant is a state sex offender.

We note, too, that Nichols did not address venue, and involved a defendant who was a federal sex offender, not, as here, a state sex offender. See 136 S. Ct. at 1116–17. A federal sex offender, unlike a state sex offender, does not need to travel interstate to commit a SORNA offense. See 18 U.S.C. § 2250(a)(2)(A)." *Holcombe* at 10.

Later, the Court also noted that "Section 2250 phrases the "federal conviction" and "interstate commerce" theories of the offense in terms of "or" indicating that the government may proceed under either one. That makes sense: If an unregistered sex offender travels in interstate commerce, the government has a federal interest in prosecuting him, regardless of

whether he is a federal or state sex offender. I'm unaware of a case that directly addresses this issue, but in *United States v. Van Buren*, a federal sex offenders was prosecuted under the interstate travel theory; the Second Circuit affirmed the conviction albeit on other grounds, Van Buren is 599 F.3d at 170 (2d Cir. 2010)." Dkt. 146 at 19, 20.

The law is clear. By explicitly requiring sequential adherence to the statute, the law demands that federal offenders be charged only under 18 U.S.C. § 2250(a)(2)(A). And, in light of the *Nichols'* decision, as this Court recognized, New York was not the proper venue for trial.

The movant was indicted against clearly established federal law and the intent of the statute.

**Applicable Law**

Grand jury proceedings carry a presumption of regularity, secrecy, and closure. See *In re Grand Jury Subpoena,* 103 F.3d 234, 239 (2d Cir.1996). Access to grand jury material is narrowly circumscribed and allowable only under the enumerated exceptions in Federal Rule of Criminal Procedure 6(e)(3). One such exception allows a defendant to seek the disclosure of grand jury minutes where the defendant "shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). The strong presumption of grand jury secrecy and regularity "can only be overcome by a defendant's strong showing of particularized need that outweighs the need for secrecy." *United States v. Moten*, 582 F.2d 654, 662 (2d Cir. 1978) (internal quotations omitted). "A party makes a showing of particularized need by proving 'that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.'" *In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996)(quoting *Douglas Oil Co. of Calif. v. Petrol Stops Nw*, 441 U.S. 211, 222).

8

## Government's Argument

The Government's objections to disclosure of the grand jury transcripts are empty. The Government forfeited the presumption of regularity with its misconduct and opened the door to a full disclosure of its arguments to the grand jury resulting in unlawful indictment. There is nothing regular about this indictment and its disclosure is needed in the resolution of this particular case. This material is needed to avoid an injustice in the instant case, where the movant was indicted and convicted against clearly established federal law and the intent of the statute.

The Government suggests the motion should be denied because movant is not allowed to engage in baseless fishing expeditions, but that is not the case here, the movant has made colorable claims of prosecutorial misconduct resulting in an unlawful indictment. The grand jury transcripts constitute discovery material and evidence in this case because this is where the indictment originated. The movant must be allowed to explore the significance of such evidence. The Court should grant the motion because there is "evidence of misconduct," and there is a "basis to conclude that an impropriety or defect exists".

The Government argues: "any motion to dismiss the Superseding Indictment, predicated on the above arguments, would be untimely. Under Federal Rule of Criminal Procedure 12(b)(3), motions to dismiss an indictment for a failure to state an offense, motions to dismiss an indictment for improper venue, and motions alleging an error in a grand jury proceeding must all be made before trial *if the basis for those motions was reasonably available* and the issues can be determined pretrial." (Dkt. 174 at 3) (emphasis added). Nothing could be more wrong. The movant did file a motion to dismiss *before trial*; *when the basis for the motion was available.* The Government incorrectly argues that the movant's claims of improper venue and unlawful indictment should be rejected mostly because of procedural default. But the question of

9

whether a federal constitutional right is to be vindicated is ultimately a question of federal law. *Brown v. Allen*, 344 U.S. 443 (1953); *Townsend v. Sain*, 372 U.S. 293 (1963). And, thereby, proper in a federal *habeas* claim.

Also See *Fay v. Noia* 372 U.S. 391, 398-99 (1963). (procedural default would not bar review on federal habeas.); On application for habeas, the district court ruled that "objecting to unconstitutionally acquired evidence at the wrong time and for the wrong purpose is not tantamount to waiver unless it was done as a matter of trial strategy, and there is an absence of evidence that such here occurred." Henry v. Williams, 299 F. Supp. 36, 49 (N.D. Miss. 1969); "Dismissal for failure to state an offense ... may occur at any time, even on appeal, and the court must consider such a point on its own motion." *Commonwealth v. Burns*, 8 Mass. App. Ct. 194, 196 (1979); The Supreme Court of Mississippi said: "But the error insisted upon goes to the very essence of the offence. It is that the indictment is invalid, because, in law, it charges no offence against the accused. If this position is correct, it is manifest that he could not waive the insufficiency of the indictment, by neglecting to raise any objection to it in the court below, so as to render a conviction rendered upon it valid; for that would be, by mere silence, to give legal validity to a criminal charge against him, when the indictment contained no such legal charge." *Newcomb v. State*, 37 Miss. 397.

## CONCLUSION

The movant was convicted at a trial where he was denied effective assistance of counsel; he was indicted against the laws of the United States; he was tried in an improper venue; unlawfully denied the opportunity to present a defense; and has been subjected to malicious prosecution. It already is an injustice that a conviction was obtained under these circumstances and that the movant's liberty has been curtailed for more than four years as a result.

Addendum 021

The Government's response to the Court's letter (Dkt. 96) was rash and irresponsible. It did not address the issues raised by the Court. The Court's letter was dated November 16 and by November 19, the Government had convened a grand jury and obtained an indictment on a very complex issue in the Southern District of New York, one of the busiest federal districts in the country in less than three days. Judging from the quality and inconsistencies with the law in its reports to this Court, it is reasonable to assume that the Grand Jury process was equally shoddy and is now ripe for examination. This Court should grant movant's motion to obtain Grand Jury transcripts.

Dated: 08/02/2021                                        Respectfully submitted,

                                                        Salvador Diaz
                                                        P. O. Box 151
                                                        Horntown, VA 23395
                                                        sal13diaz@hotmail.com

Addendum 022

Addendum 023

UNITED STATES POSTAL SERVICE®  |  **PRIORITY** MAIL®

■ Expected delivery date specified for domestic use.
■ Most domestic shipments include up to $50 of insurance (restrictions apply).*
■ USPS Tracking® included for domestic and many international destinations.
■ Limited international insurance.**
■ When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

**FLAT RATE ENVELOPE**
ONE RATE ■ ANY WEIGHT

**TRACKED ■ INSURED**

EP14F May 2020
OD: 12 1/2 x 9 1/2

PS00001000014

FROM:
SALVADOR DIAZ
P.O. BOX 151
HEARTOWN, VA 23395

TO:
PRO SE INTAKE UNIT
U.S. COURTHOUSE
500 PEARL ST. RM. 200
NEW YORK, NY 10007

UNITED STATES
POSTAL SERVICE®

USPS TRACKING #

9114 9999 4431 4470 4076 70

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020; All rights reserved.

Case 1:21-cr-00265-PKC Document 183 Filed 10/22/21 Page 64 of 108
Case 1:17-cr-00227-VEC   Document 146   Filed 03/13/19   Page 19 of 144      19
JARDIA17

```
 1    verdict.
 2              MR. DIAZ:  It's my decision.
 3              THE COURT:  It's your decision, and you're not
 4    changing it again.
 5              MR. DIAZ:  No, I'm not.
 6              THE COURT:  That's what I'm stressing.  Thank you.
 7    Please change positions.
 8              Please be seated, Mr. Diaz.
 9              Mr. Diaz has moved to dismiss the indictment for lack
10    of venue and for failure to state an offense.  These motions
11    are denied.  First, Mr. Diaz's motions are untimely.  At the
12    conference on November 20, 2018, I asked Mr. Diaz whether he
13    had any pretrial motions relating to the recently superseded
14    indictment.  Mr. Diaz said no.  That's in the transcript at
15    page 20 of that conference.  I then adjourned trial for three
16    months to give Mr. Diaz an opportunity to further consider the
17    issue.  I entered an order directing Mr. Diaz to file any
18    pretrial motions by December 21.  That's at Docket 105,
19    paragraph 6.  Mr. Diaz filed no motions until February 23, two
20    days before trial.  Federal Rule of Criminal Procedure 12(c)
21    requires a party to file motions to dismiss by the deadline set
22    by the Court, or else those motions are waived (unless the
23    defendant shows good cause) see *United States v. Crowley*,
24    236 F.3d, 104 at page  110 (2d Cir. 2000); also, *United States
25    v. Novak*, 443 F.3d, 150 at 161 (2d Cir. 2006).  I find no good
```

Addendum  024

1    cause to excuse waiver here, as the arguments that Mr. Diaz

2    makes were discussed expressly at the November 20 conference.

3    At that conference, I explained venue to Mr. Diaz and told him

4    that failure to challenge venue would result in waiver.  That's

5    in the transcript at pages 10 through 13.  I also asked the

6    government at that time to provide authority for prosecuting a

7    federal sex offender under the interstate commerce theory of

8    the offense.  The government cited a case and Mr. Diaz raised

9    no objection.  Mr. Diaz has no excuse for waiting until the eve

10   of trial to raise these objections.

11        Additionally, even if these arguments have not been

12   waived, they are meritless.  Section 2250 phrases the "federal

13   conviction" And "interstate commerce" theories of the offense

14   in terms of "or" Indicating that the government may proceed

15   under either one.  That makes sense:  If an unregistered sex

16   offender travels in interstate commerce, the government has a

17   federal interest in prosecuting him, regardless of whether he

18   is a federal or state sex offender.  I'm unaware of a case that

19   directly addresses this issue, but in *United States v. Van*

20   *Buren*, a federal sex offenders was prosecuted under the

21   interstate travel theory; the Second Circuit affirmed the

22   conviction albeit on other grounds, *Van Buren* is 599 F.3d at

23   170 (2d Cir. 2010).

24        As to venue, the Second Circuit square held in

25   Holcombe that venue for register in any district in which the

Case 1:21-cc-00857-ETCS Document 183 Filed 10/22/21 Page 66 of 108
Case 1:17-cr-00227-VEC Document 146 Filed 03/13/19 Page 21 of 144     21
JZFPDIA1

1  defendant begins or ends his interstate travel.  Holcombe is

2  843 F.3d 12 (2d Cir. 2018).  Again, this case was brought to

3  Mr. Diaz's attention months ago in the government's letter

4  dated November 19, 2018, which appears at docket 99.  Mr. Diaz

5  offers no reason that it should not apply here.

6          For those of these reasons, Mr. Diaz's motions to

7  dismiss are denied.

8          The next step.

9          MR. DIAZ:  May I answer that?

10         THE COURT:  Hang on.  *Holcombe*, for the record, is 883

11  F.3d at page 12.

12         What did you say, Mr. Diaz?

13         MR. DIAZ:  May I argue on what you just mentioned?

14         THE COURT:  No.  You submitted your motion and I've

15  ruled on that.  We're not going to argue it.

16         The next step though is the government's request to

17  introduce Government Exhibit's 2.

18         Mr. Diaz, would you like to be heard on whether

19  Government Exhibit 2 is admissible?

20         MR. DIAZ:  I believe --

21         THE COURT:  You need to stand up when you're talking

22  to me.

23         MS. KELLMAN:  Your Honor, just so we can establish a

24  procedure, is it possible for me to consult with Mr. Diaz prior

25  to him responding to the Court?

Motion
Salvador Diaz to: CaproniNYSDChambers@nysd.uscourts.gov, Carlos Santiago,
sgk@kellmanesq.com, Tarlow, Elinor (USANYS), Nessim, Daniel (USANYS)
02/23/2019 11:41 PM



From: Salvador Diaz <sal13diaz@hotmail.com>
To: "CaproniNYSDChambers@nysd.uscourts.gov"
<CaproniNYSDChambers@nysd.uscourts.gov>, Carlos Santiago
<carlos@santiagolawnyc.com>, "sgk@kellmanesq.com" <sgk@kellmanesq.com>, "Tarlow,
Elinor (USANYS)" <Elinor.Tarlow@usdoj.gov>, "Nessim, Daniel (USANYS)"
<Daniel.Nessim@usdoj.gov>

1 Attachment



Motion to dismiss Venue.docx

USDC SDNY 17-CR-227
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/24/2019

With apologies to all for any improprieties, the attached motion is submitted.

Friday, February 22, 2019

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re: United States v. Salvador Diaz, 17 Cr. 227 (VEC)

Hon. Judge Caproni:

### Motion to Dismiss

Salvador Diaz, the defendant in this case, moves for dismissal in light of the Second Circuit decision in *United States v. Holcombe* on the grounds that: (1) venue is improper in the Southern District of New York; and (2) that the charge in the indictment that defendant "did travel in interstate and foreign commerce" fails to state an offense

(1)    "A criminal defendant must be tried in the district where the crime was committed. U.S. Const. amend. VI; Fed. R. Crim. P. 18." *United States v. Holcombe*, 16-1429-cr (2d Circuit 2018) at 6.

"In agreeing with a majority of our sister circuits, we must respectfully disagree with the analysis in United States v. Haslage, 853 F.3d 331 (7th Cir. 2017). There, a split panel of the Seventh Circuit, relying almost entirely on the Supreme Court's intervening ruling in Nichols v. United States, —— U.S. ——, 136 S.Ct. 1113, 194 L.Ed.2d 324 (2016), overturned its prior precedent in United States v. Leach, 639 F.3d 769, 771–72 (7th Cir. 2011), that venue in a SORNA prosecution is proper in the departure district. In view of Nichols, the majority concluded, venue in a SORNA prosecution is not proper in the district where the sex offender's interstate travel commenced because travel "is neither a distinct crime nor an element of the crime" and therefore is not "conduct that is part of the offense." 853 F.3d at 333, 335. For the reasons already stated, we think that interstate travel is an element of a SORNA offense where, as here, the defendant is a state sex offender." *Id* at 9, 10.

"We note, too, that Nichols did not address venue, and involved a defendant who was a federal sex offender, not, as here, a state sex offender. See 136 S.Ct. at 1116–17. A federal sex offender, unlike a state sex offender, does not need to travel interstate to commit a SORNA offense. See 18 U.S.C. § 2250(a)(2)(A)." *Id* at 10.

Addendum  028

(2)      The defendant in this case is a federal offender.  As such interstate travel is not an
element of the offense and, therefore, it fails to state an offense. In alleging travel in interstate
and foreign commerce solely for the purpose of attaching venue, the government knowingly
attempts to deprive the defendant of his Sixth Amendment Constitutional right to a "public trial,
by an impartial jury of the state and district wherein the crime shall have been committed."


Respectfully,

February 23, 2019


/s/ Salvador Diaz
Salvador Diaz
P. O. Box 152
West Oneonta, NY 13861

Addendum  029

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

UNITED STATES OF AMERICA,

        -against-

SALVADOR DIAZ,

                 Defendant.

------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _2/19/2019_

17-CR-227 (VEC)

ORDER

VALERIE CAPRONI, United States District Judge:

      WHEREAS trial is scheduled to begin with jury selection on February 25, 2019 at

9:45 a.m.; and

      WHEREAS on February 15, 2019, the parties appeared for a final pretrial conference

with this Court;

      IT IS HEREBY ORDERED THAT:

      1.     To the extent that Mr. Diaz has moved to dismiss the indictment based on 21

U.S.C. § 851(c)(2), that motion is DENIED. This statute applies only to drug-related offenses

and has no bearing on a prosecution for failure to register under SORNA. *See* 21 U.S.C.

§ 851(a)(1) (proceedings to challenge the constitutionality of prior convictions apply only to

individuals who "stand[] convicted of an offense *under this part*" (emphasis added)). In *Custis*

*v. United States*, the Supreme Court held that Congress has the power to prevent a defendant

from collaterally attacking a conviction during a subsequent criminal proceeding in which the

conviction is an element of the offense. *See* 511 U.S. 485, 491–92 (1994). *Custis* held that

because the federal felon-in-possession statute does not contain the same language as 21 U.S.C.

§ 851(c)(2), by "negative implication," Congress did not intend to permit collateral attacks in

felon-in-possession cases. *See id.* at 493. As this Court has explained at length, the same

Addendum 030

reasoning applies to failure to register. *See* Mem. Op. and Order, Dkt. 71, at 7–8 (citing *United States v. Delgado*, 592 F. App'x 602, 603 (9th Cir. 2015)).

2.      To the extent that Mr. Diaz has moved to reopen his motion to collaterally attack his prior conviction, on the ground that his court-martial lacked jurisdiction, the motion is DENIED. As noted above and in prior orders, the law is clear that a criminal defendant cannot collaterally attack a prior conviction during a prosecution for failure to register under SORNA. Nevertheless, to the extent that lack of jurisdiction for the predicate conviction could be an exception to this rule, Mr. Diaz's argument is foreclosed by *Solorio v. United States*, 483 U.S. 435 (1987). As Mr. Diaz acknowledged in his motion to dismiss, *Solorio* holds that courts-martial have "jurisdiction to prosecute all cases against military personnel." Def.'s Mem. of Law, Dkt. 61, at 8; *see also* Def.'s Reply Mem. of Law, Dkt. 70, at 7. Because Mr. Diaz was in the Navy at the time of his court martial, the tribunal had jurisdiction over his case. As noted, however, Mr. Diaz has presented no authority that this jurisdictional argument is even properly before this Court as part of his defense to a failure-to-register charge.

3.      To the extent that Mr. Diaz has moved to dismiss the indictment based on 34 U.S.C. § 20911(5)(B), the motion is DENIED, as that provision applies only to foreign convictions.

4.      Mr. Diaz is reminded that this Court has repeatedly ruled that he may not challenge the validity of his prior conviction in this proceeding. Although the Court understands that Mr. Diaz disagrees, those rulings are the law of the case and may not be disobeyed.

**SO ORDERED.**

Dated: February 19, 2019
       New York, NY

**VALERIE CAPRONI**
**United States District Judge**

2

Addendum  031

1       But at the end of the day standby counsel is just that.  They

2       are someone that you can ask questions to.  They can't talk in

3       court.

4                   THE DEFENDANT:  Could Mr. Lynch fill that position?

5                   THE COURT:  I am not sure what Mr. Lynch is doing

6       here.  Did I sign off for Mr. Lynch?

7                   MR. DeMARCO:  You did, Judge.  Mr. Lynch is part of

8       the mentoring program, and he is my mentor.

9                   THE DEFENDANT:  Believe it or not, I was in the

10      military, and I hate to spend extra money or suffer something

11      that I don't see is producing anything.  When I filed in the

12      Court of Appeal, Mr. DeMarco bailed out immediately.  So he is

13      not helping me when I need it.  What's the point?

14                  THE COURT:  He can't file things -- you can file.  You

15      can't sign.

16                  MR. DeMARCO:  Exactly.  I can file.

17                  THE COURT:  Your motion is pending in the Second

18      Circuit.  I have seen it, a motion for a stay.  I don't think

19      it's going to be granted and that's why I'm proceeding.  I'm

20      proceeding on the assumption that the Second Circuit is not

21      going to stay this.

22                  Have you responded yet to the motion to stay?

23                  MS. TARLOW:  We have not, your Honor.

24                  THE COURT:  When is your response due?

25                  MS. TARLOW:  I would need to confer the docket.

1              THE DEFENDANT:  Excuse me.  Who is this?

2              THE COURT:  This is the prosecutor.

3              THE DEFENDANT:  What is her name?

4              THE COURT:  Ms. Tarlow.

5              THE DEFENDANT:  Who is Sarah Eddy.

6              THE COURT:  Was that the prior prosecutor?

7              THE DEFENDANT:  That is the attorney that is listed as

8    the government attorney in the appeal court.

9              THE COURT:  Is that head of the appeals?

10             MS. TARLOW:  Yes.

11             THE DEFENDANT:  I've tried to contact her and send

12   stuff, and even the Court said something to her saying that she

13   has not filed a notice of appearance.  Now you are talking

14   about she is doing something that I didn't see her name

15   anywhere within the context of that.

16             THE COURT:  Just as a general matter, are you going to

17   be handling the appeal?

18             MS. TARLOW:  Yes, your Honor.

19             THE COURT:  You should assume that Ms. Tarlow is the

20   prosecutor for all purposes.

21             THE DEFENDANT:  For everything.

22             THE COURT:  For everything.  If there is something she

23   is not doing, she will let you know that.

24             My point is, as much as you may think that Mr. DeMarco

25   is not helping, I think it is in your interest to have standby

1    counsel.

2           You are out on bail.  Is there a real difference to

3    you between trying the case on February 4 and trying the case

4    on February 24?

5           THE DEFENDANT:  No.  To me --

6           THE COURT:  It's the same difference.  Let's keep Mr.

7    DeMarco.

8           THE DEFENDANT:  That's the only thing I object to.

9    He's not helping me anything.  When I need help, when I ask for

10   assistance, I get sent some reference to the Internet.  Nobody

11   explain to me exactly -- I saw something about what was that

12   last note I send you, 3500?

13          MR. DeMARCO:  3500.

14          THE DEFENDANT:  She speaks in legalese and she says

15   3500 is going out.  I ask him, what is 3500?  He send me a

16   reference to the website.

17          THE COURT:  This is the problem of representing

18   yourself, Mr. Diaz.

19          THE DEFENDANT:  That's why I get an attorney that

20   would help me when I need it.

21          THE COURT:  3500 material is a reference to a statute.

22          THE DEFENDANT:  He explained it now this morning.

23          THE COURT:  We are going to adjourn the trial as soon

24   as I get a calendar.  February 25.  That works, Mr. DeMarco?

25          MR. DeMARCO:  Yes, it does, Judge.  Should be done by

Addendum  034

 1   statute.  I think we have read all of these SORNA cases that

 2   exist.

 3           Is there any authority for the notion that the

 4   government can, in lieu of proceeding under the prong of the

 5   statute that clearly deals with federal sex offenders like Mr.

 6   Diaz, just abandon that prong of the statute and proceed under

 7   the interstate commerce prong?

 8           MS. TARLOW:  Your Honor, in arguing the statute the

 9   two subsections are phrased as "or."  So the government can

10   proceed under either one.  There are cases in which a federal

11   sex offender was charged with traveling in interstate commerce.

12   That was in *Van Buren*, which I know your Honor believes, in

13   part, was overruled by *Nichols*.  Our understanding is that

14   those two subsections are what establishes the federal hook in

15   a case and that the government can proceed under either one.

16           THE COURT:  Do you understand that theory, their

17   argument on this?

18           THE DEFENDANT:  Vaguely.  Once I get -- all of that is

19   in the motion, right?

20           THE COURT:  Not this.  This aspect wasn't really

21   briefed.  This was when the Court issued an order last week

22   asking for an explanation from the government.  Their

23   explanation was, oops, let me supersede.  So they changed the

24   theory of the indictment.

25           THE DEFENDANT:  Can they do that?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1           THE DEFENDANT:  Probably, one in Maryland, Delaware.

2    Delaware is closer.  I think there is one in Maryland in

3    Princess Anne County.

4           THE COURT:  There might be.  Even if you go watch a

5    state trial, that would probably be helpful.

6           If you stay in New York, starting on the 19th, there

7    is a trial in front of Judge Kaplan that would be across the

8    street at 500 Pearl Street.  The name of the case is U.S. v.

9    Dumitru.  Jury selection starts at 9:30.

10          I'm only suggesting this.  It might be a value to you

11   to see how all these things work before you're actually

12   expected to do it because, remember, your standby counsel can

13   whisper in your ear, but they can't talk.

14          Do you still want to proceed representing yourself?

15          THE DEFENDANT:  Before I answer that, can I ask a

16   question?

17          THE COURT:  Yes.

18          THE DEFENDANT:  Let me answer that.  I don't.  I need

19   to talk to an attorney that understand what I'm saying, that

20   sits with me for a few hours and understands where I'm coming

21   from.  I've been dealing with the law of my case for 18 years,

22   and I know that an attorney does not have the time to go

23   through all of that.  My records is about this big.  I know

24   that's not supposed to be an issue here, but it is that big

25   because the issues that I'm bringing are things that happened

Addendum  036

1    in federal court.  I think those belong here.

2            THE COURT:  I know you do, Mr. Diaz, but I don't.  So

3    this case is purely whether you registered or not, whether you

4    have a prior conviction that requires you to register and

5    whether you registered or not.  I understand that you disagree

6    with that ruling, but I'm not changing that ruling.  The Second

7    Circuit may reverse me.

8            THE DEFENDANT:  That's what we spoke about.

9            THE COURT:  I realize that that's your hope.

10           THE DEFENDANT:  I believe that.  Rule 104(e) grants me

11   the right to challenge that conviction.

12           THE COURT:  I understand that.

13           THE DEFENDANT:  That's what I'm pursuing.

14           THE COURT:  I understand that.

15           THE DEFENDANT:  When somebody makes a ruling and says

16   that's not what 104(e) is, in writing, give me something that

17   convinces me of that, I might be willing to pursue another

18   avenue.  Right now, to me, that is Federal Rules of Evidence.

19           When you were there -- before you allow me to proceed

20   pro se, you told me that we were bound by the Federal Rules of

21   Evidence and that I should get familiar with it.  I did.  To

22   me, 104(e) says that I can challenge that conviction in court,

23   in front of the jury.  That's what I read over there.

24           If somebody is over here, over here has a lot more

25   legal experience than I have, can explain to me why that is not

1  bound and doesn't affect this here, maybe I would be able -- so

2  far the arguments -- I have not heard anything from the Court

3  or heard something that was not convincing from my attorney.  I

4  want to pursue that until somebody convinces me otherwise.

5       THE COURT:  You are not going to pursue it in this

6  trial unless the Second Circuit intervenes before the trial.

7       THE DEFENDANT:  Correct.

8       THE COURT:  Which I don't think they are going to.

9       THE DEFENDANT:  I understand.

10      THE COURT:  I am back to my question, which is, I

11  have, at your request, discharged your attorneys.  I've got

12  them here on a standby basis.  Do you continue to wish to

13  represent yourself in this trial?

14      THE DEFENDANT:  As long as my only alternative is Mr.

15  DeMarco, yes, I proceed myself.

16      THE COURT:  I think he is your alternative because

17  I've already allowed you to change counsel once.

18      THE DEFENDANT:  Yes.

19      THE COURT:  Frankly, Mr. Diaz, I don't have a lot of

20  hope that if I appointed another attorney for you that we would

21  end up anywhere different from where we are right now.

22      THE DEFENDANT:  That's a possibility.  You are right.

23      THE COURT:  Because every attorney is going to tell

24  you the same thing, which is, that's not a defense that you can

25  mount in this trial.

Addendum  038

1          THE DEFENDANT:  If that is a fact and I saw it

2    somewhere in some law that says that, like I said, I might be

3    persuaded.  But so far all I've heard is common dicta about

4    this, but I have not seen anything in law.

5          When I look at the law book, I see something

6    different.  When somebody tells me something else, I am not

7    convinced of what I have seen so far from courts.  I would

8    proceed on my own then.  Because if you can refer my case to

9    the ACLU or somebody like that, maybe I talk to them and they

10   might convince me.  Right now I am not confident that Mr.

11   DeMarco is looking after my best interests.

12         THE COURT:  Understood.  I am confident that Mr.

13   DeMarco is in fact looking after your best interests to the

14   extent he can, given the fact that you have a definite view on

15   how to defend this case, and your view on how to defend this

16   case is not admissible under my ruling.

17         You have so far not filed any pretrial motions, is

18   that right?

19         THE DEFENDANT:  No, I have not.

20         THE COURT:  Do you want to file any pretrial motions?

21         THE DEFENDANT:  No.  I don't have anything.

22         THE COURT:  We are good then.

23         THE DEFENDANT:  I'm playing defense here.

24         THE COURT:  That's the role of a defendant.

25         We are going to adjust the preliminary charge to

Addendum 039

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - x
                   :

UNITED STATES OF AMERICA    :   SUPERSEDING
                   :   INDICTMENT

    - v. -         :
                   :   S1 17 Cr. 227 (VEC)

SALVADOR DIAZ,        :

    Defendant.     :

                   :
- - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: NOV 1 9 2018

## COUNT ONE

The Grand Jury charges:

From at least in or about 2014, up to and including in or about January 2017, in the Southern District of New York and elsewhere, SALVADOR DIAZ, the defendant, being an individual required to register under the Sex Offender Registration and Notification Act ("SORNA"), did travel in interstate and foreign commerce, and knowingly did fail to register and update a registration as required by SORNA, to wit, DIAZ, who is required to register as a sex offender under SORNA, moved from New York to another state, in which he resided and where he was required to register, without registering as a sex offender in that state.

(Title 18, United States Code, Section 2250.)

FOREPERSON *Michele Kahn*
11-19-18

GEOFFREY S. BERMAN
United States Attorney

Addendum 040

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

**v.**

### SALVADOR DIAZ,

Defendant.

### SUPERSEDING
### INDICTMENT

S1 17 Cr. 227 (VEC)

(18 U.S.C. § 2250)

GEOFFREY S. BERMAN
United States Attorney

Foreperson  *11-19-18*

*11/19/18 - - Filed Superseding Indictment.*
*as*

*J Pitman*
*USMJ*



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 19, 2018

**BY ECF**

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

  Re: *United States v. Salvador Diaz*, 17 Cr. 227 (VEC)

Dear Judge Caproni:

  The Government respectfully writes in response to the Court's order, dated November 16, 2018, directing the Government to address the effect of *Nichols v. United States*, 136 S. Ct. 1113 (2016) on this case. The Court requested that the Government respond whether, in light of *Nichols*, (1) the indictment properly states an offense; (2) venue is proper; and (3) a jury charge proposed by the Government should be used at trial.

  The Government has filed a superseding indictment which, for the reasons stated below, properly states an offense for which venue is proper in this District. (*See* Exhibit A). Further, although the Government submits that *Nichols* did not expressly overrule *United States v. Van Buren*, 599 F.3d 170, 175 (2d Cir. 2010), the Government does not object to a modification of Request No. 10 in its Requests to Charge as proposed below.[1]

**I.  The Superseding Indictment Properly States an Offense.**

  The superseding indictment charges the defendant with "mov[ing] from New York to another state, in which he resided and where he was required to register, without registering as a sex offender in that state." (*See* Exhibit A). The Sex Offender Registration and Notification Act ("SORNA") requires that a sex offender "shall register, and keep [his] registration current, in each jurisdiction where the offender resides," including that the offender must provide notification in person "not later than 3 business days after each change of name, residence, employment, or student status." 34 U.S.C. § 20913(a), (c). The Supreme Court held in *Nichols* that, when a sex offender moves to another state, SORNA does not require a sex offender to update his registration in the state where he no longer resides. 136 S.Ct. at 1118. Instead, the sex offender must only register in the state to which he moves. *Id.*

---

[1] The Government separately will file a modified version of its requests to charge in light of its superseding indictment.

The original indictment in this case alleged that the defendant had "changed his residence without updating his registered address in New York." (Dkt. 12). Although this language can be read in a way that is consistent with the Government's theory of this case—that the defendant failed to update his address in New York with the authorities of any state where he moved—in order to make the charging language explicitly consistent with *Nichols*, the Government has amended this language in its superseding indictment. The superseding indictment now alleges that the defendant "moved from New York to another state, in which he resided and where he was required to register, without registering as a sex offender in that state." (*See* Exhibit A). The superseding indictment, thus, properly charges the defendant with failing to register with the authorities of the state to which he moved, after he left his last registered address in New York, and it is consistent with the Supreme Court's holding in *Nichols*.

## II. There is Venue in this District for the Offense Charged in the Superseding Indictment.

The superseding indictment further alleges an offense for which there is venue in this District. Pursuant to 18 U.S.C. § 2250, SORNA imposes liability on any person who is required to register under SORNA and who:

> **(2) (A)** is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice) . . . ; or **(B)** travels in interstate or foreign commerce . . .; and
>
> **(3)** knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

18 U.S.C. § 2250(a); *see United States v. Gundy*, 804 F.3d 140, 141 (2d Cir. 2015).

The original indictment in this case charged the defendant with being a "sex offender as defined for the purposes of [SORNA] by reason of a conviction under Federal law (including the Uniform Code of Military Justice)." *See* 18 U.S.C. § 2250(a)(2)(A). The superseding indictment now charges the defendant with traveling in interstate commerce. *See id.* § 2250(a)(2)(B).

In *Holcombe v. United States*, the Second Circuit explicitly held that where, as here, a defendant is charged with a SORNA offense that involves travel in interstate commerce as an element, venue is proper "in any district in which such offense was begun, continued, or completed." 883 F.3d 12, 15 (2d Cir. 2018); 18 U.S.C. § 3237(a). The Court went on to conclude that such an offense "begins," and venue is proper, in "the district that the defendant leaves, not in the district where the defendant's interstate travel ends and in which the defendant ultimately fails to register." *See id.* at 15; *see also United States v. Kopp*, 778 F.3d 986, 988–89 (11th Cir. 2015); *United States v. Lewis*, 768 F.3d 1086, 1092–94 (10th Cir. 2014); *United States v. Howell*, 552 F.3d 709, 717–18 (8th Cir. 2009).

Here, by in or about December 2014, the defendant had left his registered address in this District. He then lived for a period of time first in New Jersey and thereafter in Virginia, where

2

November 19, 2018
Page 3

he was ultimately arrested. Accordingly, the superseding indictment charges the defendant with an offense that "began" and for which venue would be proper in this District.

Although the superseding indictment amends the date range and an element of the offense with which the defendant is charged, the defendant has had notice throughout this case that the Government's theory is that the defendant traveled from New York to New Jersey and then to Virginia during this time period. The Government has continuously asserted that, after the defendant left his residence in New York, by in or about December 2014, he moved to New Jersey and then to Virginia without registering in either state. (*See e.g.*, Complaint, Dkt. 1 at ¶¶ 5-7; Presentment Transcript, Dkt. 16 at 5-6, 8; Gov't Opp. to Mot'n to Dismiss, Dkt. 35 at 2.)

### III.    The Government Does Not Object to a Modification of Request No. 10 in its Requests to Charge.

The Government respectfully submits that *Nichols* did not expressly overrule the Second Circuit's determination in *United States v. Van Buren*, 599 F.3d 170, 175 (2d Cir. 2010), that SORNA requires a sex offender to update his registration information even if he has not yet established a new residence. However, because the Government's position is that the defendant did establish new residences in New Jersey and Virginia, it does not object to the Court removing the following portion of the Government's Request No. 10 of its request to charge:

> "A change in residence does not require that you find that the defendant has established a new residence. Rather, it's enough for you to find that the defendant's home or other place where he habitually lives is no longer the same as the one listed in the registry."

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By: _____
Elinor L. Tarlow
Assistant United States Attorney
(212) 637-1036

cc:    Mark DeMarco, Esq. (standby counsel, by ECF)

3

Addendum  044

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/16/2018
```

------------------------------------------------------------ X

UNITED STATES OF AMERICA,

           -against-

SALVADOR DIAZ,

                    Defendant.

:
:
:
:
:
:
:
:
:
:
:
:

17-CR-227 (VEC)

ORDER

------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

       WHEREAS a final pretrial conference is scheduled for November 20, 2018 at 11:00 a.m.;

       IT IS HEREBY ORDERED THAT no later than **November 19, 2018 at 5:00 p.m.**, the

Government must submit a letter addressing the effect of *Nichols v. United States*, 136 S. Ct.

1113 (2016), on this case. The Court understands *Nichols* to hold that a sex offender who

changes his residence does not need to update his registration in the jurisdiction where he is

departing but, rather, needs to re-register only in the jurisdiction where he establishes a new

residence. *See* 136 S. Ct. at 1117–18. Applied here, *Nichols* suggests that Mr. Diaz was not

required to notify New York authorities of his change of residence; he was (allegedly) required

to notify only the New Jersey and/or Virginia authorities of his change of residence.

Accordingly:

       1.     In light of *Nichols*, the Government must explain why the Indictment properly

states an offense, given that it alleges that Mr. Diaz "changed his residence without updating his

registered address *in New York*," Dkt. 12 (emphasis added).

       2.     The Government must also explain why venue is proper in this District, given that

*Nichols* suggests that Mr. Diaz's alleged offense was his failure to report his change of residence

to New Jersey and/or Virginia authorities, not New York authorities. The Government's

explanation regarding venue should address *United States v. Holcombe*, 883 F.3d 12 (2d Cir.

2018), and the Court of Appeals decisions cited therein.

3.      Additionally, the Government must explain why Request No. 10 in its Requests to

Charge is appropriate in light of *Nichols*. The request asks the Court to instruct the jury that "[a]

change in residence does not require that you find that the defendant has established a new

residence. Rather it's enough for you to find that the defendant's home or other place where he

habitually lives is no longer the same as the one listed in the registry." Dkt. 87 at 10. The

request appears to rely on *United States v. Van Buren*, 599 F.3d 170, 175 (2d Cir. 2010), which

held that "SORNA requires a convicted sex offender to update his registration information in

person upon terminating his current residence with no intention of returning, even if the sex

offender has not yet established a new residence." *Nichols*, however, expressly rejected this

argument when the Government made it to the Supreme Court. *See* 136 S. Ct. at 1118–19; Br. of

United States at 16, 21–22, *Nichols v. United States*, 136 S. Ct. 1113 (2016) (No. 15-5238), 2016

WL 369496 (relying on *Van Buren* for this argument). To the extent the Government intends to

pursue Request No. 10, it must address whether *Nichols* has overruled *Van Buren*.

4.      The Court will email a copy of this order to Mr. Diaz.

**SO ORDERED.**

**Dated: November 16, 2018**
       **New York, NY**

_____
**VALERIE CAPRONI**
**United States District Judge**

2

Addendum  046

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/10/2018
```

------------------------------------------------------------- X

UNITED STATES OF AMERICA,

                -against-

           :      17-CR-227 (VEC)

           :      ORDER

SALVADOR DIAZ,

                         Defendant.   :

------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

        WHEREAS trial is scheduled to begin on November 13, 2018 (*see* Dkt. 76); and

        WHEREAS on September 22, 2018, the Government filed a motion *in limine* to preclude

Mr. Diaz from introducing evidence or argument at trial attacking the validity of his prior sex-

offense conviction or of his state sex-offender registration proceedings (*see* Dkt. 80); and

        WHEREAS on September 29, 2018, Mr. Diaz filed a response to the Government's

motion *in limine*, in which Mr. Diaz opposed the Government's motion and further moved to

preclude the Government from making reference to the particulars of his sex-offense conviction

(*see* Dkt. 82);

        IT IS HEREBY ORDERED THAT:

        1.     The Government's motion is GRANTED.  For the reasons stated in the Court's

opinions denying Mr. Diaz's motion to dismiss (*see* Dkt. 71) and motion for reconsideration

(*see* Dkt. 75), the validity of Mr. Diaz's sex-offense conviction and of his state sex-offender

registration proceedings is not relevant to the charge of failure to register.  Accordingly, Mr.

Diaz will not be permitted to introduce evidence at trial that tends to show that the conviction or

registration proceedings are invalid, nor will Mr. Diaz be permitted to make any such arguments to the jury.[1]

2.      Mr. Diaz's motion to preclude the Government from making reference to the particulars of his sex-offense conviction is GRANTED. Because "SORNA focuses only on 'the *fact* of the [prior] conviction,'" Mem. Opinion and Order (July 13, 2018), Dkt. 71, at 8 (quoting *Custis*, 511 U.S. at 491), the factual details of that conviction are not relevant to the offense. Even if they were, the Court would preclude evidence of them as substantially more unfairly prejudicial than probative, pursuant to Federal Rule of Evidence 403. Accordingly, at trial, the Government will not be permitted to introduce evidence relating to the particulars of Mr. Diaz's sex-offense conviction, including the conduct underlying the conviction, the fact that the conviction involved Mr. Diaz's daughter, and the fact that Mr. Diaz's daughter was a minor at the time of the underlying conduct.

3.      The Clerk is respectfully directed to close the open motions at Dkts. 80 and 81. The Clerk is also directed to mail a copy of this order to Mr. Diaz.

**SO ORDERED.**

**Dated: October 10, 2018**
**New York, NY**

_Valerie Caproni_
**VALERIE CAPRONI**
**United States District Judge**

---

[1]      *See* Mem. Opinion and Order (July 13, 2018), Dkt. 71, at 8 ("SORNA focuses only on 'the *fact* of the [prior] conviction.' The procedural validity *vel non* of Diaz's prior conviction is thus not at issue in the instant prosecution, and Diaz may not use this proceeding to collaterally attack it." (quoting *Custis v. United States*, 511 U.S. 485, 491 (1994), and citing *United States v. Delgado*, 592 F. App'x 602, 603 (9th Cir. 2015))); *see also id.* at 9 ("[W]hile the requirement to register as a sex offender is an element of the offense charged in the instant case, that element focuses on the *fact* of the registration requirement, not on the procedural validity of the proceeding that gave rise to the requirement.").

Addendum  048

Case 1:21-cr-00287-ECS Document 183 Filed 10/22/21 Page 89 of 108
Case 1:17-cr-00227-VEC Document 78 Filed 09/17/18 Page 13 of 15     13
i812diaC kjc

1    my -- the issues that I am bringing in.  I have never had the

2    opportunity to speak to the court in front of a judge with the

3    prosecutor present or rebut any argument or anything that's

4    being made.  I don't like to see that happen, so I can say that

5    at least I am getting an opportunity to speak to the court.  It

6    hasn't happened so far, it didn't happen in your last decision,

7    and I think it is wrong.  I can punch holes through everything

8    that you said there, but I'm not allowed to say it.

9            THE COURT:  Here is the problem, Mr. Diaz.  The law is

10   clear that when you are charged with a crime like you are

11   charged with, you can't use the criminal charge as a way to

12   collaterally attack the underlying conviction.  In other words,

13   even if everything you say is correct about what happened in

14   military court, you still are obligated to register as a sex

15   offender.  You can't use this criminal case to fix whatever

16   happened in the court-martial.

17           THE DEFENDANT:  That's not what I am saying.

18           THE COURT:  That's just what the law is.

19           THE DEFENDANT:  You are saying the law is clear.

20   Where is this law?

21           THE COURT:  That's what was in my opinion.

22           THE DEFENDANT:  There is no law that says that.

23           THE COURT:  Okay.

24           THE DEFENDANT:  There is no single regulation there

25   that says you cannot challenge a conviction.  The only law that

likely procedurally improper and unlikely to succeed in the instant proceeding. *Id.* at 4–15.

Nevertheless, after hearing that Diaz had consulted with his attorney about the collateral attack

motion, the Court set a briefing schedule and continued to hold the First Motion to Dismiss in

abeyance. *Id.* at 15–16.

     A few months later, Diaz's attorney filed a letter indicating that Diaz wished to withdraw

his motion to collaterally attack the conviction and that, instead, the Court should decide the First

Motion to Dismiss. *See* Def. Ltr. (Jan. 8, 2018), Dkt. 53, at 6. Diaz then wrote the Court

personally, stating that his attorney's letter had "ignored [his] wishes" and that he indeed wished

to proceed with a collateral attack. *See* Def. Ltr (Feb. 5, 2018), Dkt. 56. At a subsequent status

conference, Diaz asked the Court to relieve his attorney and allow him to proceed *pro se*.

*See* Status Conference Transcript (Mar. 1, 2018), Dkt. 65, at 2–3. After ensuring that Diaz

understood his right to counsel and the perils of proceeding *pro se*, the Court relieved Diaz's

attorney and allowed Diaz to proceed *pro se* (with his former attorney as standby counsel).

*See id.* at 3–19; Order (Mar. 1, 2018), Dkt. 62. The Court also confirmed that Diaz wished to

withdraw the First Motion to Dismiss; accordingly, the Court dismissed the First Motion to

Dismiss as moot and allowed Diaz to brief the instant motion. *See* Order (Mar. 2, 2018), Dkt.

62.

## DISCUSSION

### I.    Standard of Review

     Federal Rule of Criminal Procedure 12(b) provides that "[a] party may raise by pretrial

motion any defense, objection, or request that the court can determine without a trial on the

issue." Fed. R. Crim. P. 12(b); *see also United States v. Covington*, 395 U.S. 57, 60–61 (1969);

*United States v. Bodmer*, 342 F. Supp. 2d 176, 180 (S.D.N.Y. 2004). Because federal crimes are

"solely creatures of statute," *Dowling v. United States*, 473 U.S. 207, 213 (1985) (internal

quotation marks omitted), "a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute," *United States v. Aleynikov*, 676 F.3d 71, 75–76 (2d Cir. 2012). The court, however, must accept all factual allegations in the indictment as true when deciding such a motion. *See United States v. Martinez*, No. S1 94 CR 219, 1995 WL 10849, at *2 (S.D.N.Y. Jan. 12, 1995) (citing *Costello v. United States*, 350 U.S. 359 (1956)).

Additionally, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted) (collecting cases).

## II.     Diaz's Motion to Dismiss the Indictment Is Denied

### A.     Diaz May Not Attack the Procedural Validity of His Prior Conviction in this Case

Diaz's central claim is that the Indictment must be dismissed because it depends upon a prior conviction that was procedurally defective. *See* Def. Mem. of Law, Dkt. 61, at 5.

As applied to Diaz, the elements of failure to register, pursuant to 18 U.S.C. § 2250, are that the defendant: (1) was required to register as a sex offender under SORNA; (2) is a "sex offender" by reason of a conviction under federal law (including under the Uniform Code of Military Justice); and (3) knowingly failed to register or update his registration. *See* 18 U.S.C. § 2250(a); *Carr v. United States*, 560 U.S. 438, 445–46 & n.3 (2010); 3 *Modern Federal Jury Instructions: Criminal* ¶ 61.10 (2018). Thus, looking to the second element, a prior conviction for a "sex offense" (as SORNA defines that term) is an element of the crime of failure to register.

SORNA's framework is not unique. In other contexts, a defendant's prior conviction may be an element of an offense charged in a subsequent prosecution. *See, e.g.*, 18 U.S.C.

6

§ 922(g) (federal felon-in-possession statute). In analyzing convictions under such statutes,

courts have consistently held that a defendant may not use the subsequent criminal proceeding to

collaterally attack the prior conviction. In *Lewis v. United States*, 445 U.S. 55 (1980), for

example, the defendant argued that his prior felony conviction was procedurally defective and

thus could not be used as a predicate for his subsequent prosecution under the federal felon-in-

possession statute.[2] *See* 445 U.S. at 56. The Supreme Court rejected the defendant's argument,

holding that nothing in the felon-in-possession statute "suggest[ed] a congressional intent to limit

its coverage to persons [whose convictions are not subject to collateral attack]." *Id.* at 60

(second alteration in original) (internal quotation marks omitted). Rather, the statute applied

broadly to all prior felony convictions and did not "open the predicate conviction to a new form

of collateral attack." *Id.* at 67. *Custis v. United States*, 511 U.S 485 (1994), reached a similar

conclusion, reasoning that the felon-in-possession statute "focuses on the *fact* of the conviction

and [that] nothing suggests that the prior final conviction may be subject to collateral attack for

potential constitutional errors before it may be counted" in a subsequent prosecution. 511 U.S. at

490–91. Similar attempts to collaterally attack a prior conviction as part of a subsequent

prosecution that includes as an element that the defendant was previously convicted have yielded

the same result. *See, e.g.*, *United States v. Warren*, 335 F.3d 76, 77–78 (2d Cir. 2003) (holding

that the validity of a conviction giving rise to a sentence of supervised release may not be

collaterally attacked in a subsequent proceeding for the revocation of supervised release).

Based on this authority, at least one court has expressly held that a defendant may not

collaterally challenge the prior conviction that made him a "sex offender" during a prosecution

---

[2]      The statute at issue in *Lewis*, a precursor to 18 U.S.C. § 922(g), provided that any person who "has been
convicted . . . of a felony" may not receive, possess, or transport a firearm. *See Lewis*, 445 U.S. at 56 n.1.

Addendum  052

for failure to register as a sex offender. *See United States v. Delgado*, 592 F. App'x 602, 603

(9th Cir. 2015). The Court agrees with and adopts the reasoning of *Delgado*.

Diaz's challenge falls squarely within this well-established line of authority. Diaz claims

that the appellate review of his prior conviction was defective and that the Kansas district courts

inadequately addressed his petitions for writs of *habeas corpus*. *See* Def. Mem. of Law, Dkt. 61,

at 6, 8; Def. Reply Mem. of Law, Dkt. 70, at 3–4, 7–9. Essentially, Diaz seeks to use this

prosecution as a vehicle to collaterally attack his underlying predicate conviction. But nothing in

SORNA limits the statute's reach to procedurally sound convictions or otherwise authorizes

collateral attacks on those convictions. *See Delgado*, 592 F. App'x at 603. As with the felon-in-

possession laws, SORNA focuses only on "the *fact* of the [prior] conviction." *Custis*, 511 U.S.

at 491. The procedural validity *vel non* of Diaz's prior conviction is thus not at issue in the

instant prosecution, and Diaz may not use this proceeding to collaterally attack it.[3]

For all these reasons, the Court denies Diaz's motion to dismiss the Indictment on the

ground that his court-martial conviction was procedurally defective.

---

[3]        None of the exceptions to the doctrine set forth in *Lewis* and *Custis* apply here. Those cases recognized
that a defendant may, in some contexts, use a subsequent prosecution to challenge a prior conviction if the prior
conviction was obtained in violation of the defendant's right to counsel. *See Custis*, 511 U.S. at 495 (citing *Burgett
v. Texas*, 389 U.S. 109, 115 (1967)); *Lewis*, 445 U.S. at 66. Here, Diaz does not allege that he was deprived of the
right to counsel in his court-martial proceedings; he alleges only that his counsel was ineffective. *Custis* expressly
held that the exception for a collateral attack based on a deprivation of the right to counsel does not apply to a claim
of ineffective assistance. *See* 511 U.S. at 496; *see also United States v. Rodriguez-Perez*, 428 F. App'x 324, 327-28
(5th Cir. 2011).

        Additionally, longstanding precedent allows a defendant to challenge an immigration removal order in a
subsequent prosecution for illegal reentry. *See* 8 U.S.C. § 1326(d); *United States v. Mendoza-Lopez*, 481 U.S. 828,
841–42 (1987). But that exception relies on the fact that an exception was necessary because otherwise removal
orders would be entirely immune from judicial review. *See Mendoza-Lopez*, 481 U.S. at 841 ("It is precisely the
unavailability of effective judicial review of the administrative determination at issue here that sets this case apart
from *Lewis*."). As the Court has discussed, Diaz has had ample judicial review of his prior conviction, so this
exception does not apply.

I31HDIAC

1          (Case called)

2          MS. GREENWOOD:  Good afternoon.  Assistant United

3    States Attorney Jessica Greenwood on behalf of the government.

4          MR. DeMARCO:  For Mr. Diaz, Mark DeMarco.  And

5    accompanying me, your Honor, is Steven Lynch.  He's a

6    participant in the Court's mentoring program.

7          THE COURT:  Terrific.  Good.  Welcome.

8          MR. DeMARCO:  He's here with us.  And Mr. Diaz, of

9    course, is to my left.

10          THE COURT:  Good afternoon, Mr. Diaz.  Please be

11    seated.

12          All right.  Let me tell you where I think we are in

13    this case.  Mr. DeMarco, I read your letter dated January 8,

14    2018, as saying you do not believe there is a basis in law to

15    make the argument that Mr. Diaz can collaterally attack his

16    court-martial conviction as part of this criminal case.

17          MR. DeMARCO:  That's right.

18          THE COURT:  I tend to agree with that.  That's likely

19    correct.  That's a likely correct assessment of the law.

20          Mr. Diaz, here's where I see you.  You have two

21    options, which will generate other options, but the two options

22    are you can proceed with Mr. DeMarco as your attorney, in which

23    case he has asked the Court to unsuspend the motion to dismiss

24    and to decide it, which the Court would then do.  If I grant

25    it, you go home.  If I deny it, we set a trial date.  Or you

Case 1:21-cr-00837-VEC  Document 183  Filed 10/21/21  Page 95 of 108
Case 1:17-cr-00227-VEC  Document 65  Filed 03/28/18  Page 8 of 29      8
I31HDIAC

 1     yes.

 2              THE COURT:  You're familiar with there are rules,

 3     right?

 4              THE DEFENDANT:  Yes, I am.

 5              THE COURT:  Your lawyer is familiar with both the

 6     Rules of Federal Criminal Procedure and the Rules of Evidence.

 7     Do you understand that?

 8              THE DEFENDANT:  I understand you're telling me that,

 9     yes.

10              THE COURT:  Mr. DeMarco has tried a case in front of

11     me.

12              MR. DeMARCO:  Yes.

13              THE COURT:  Do I remember that correctly?

14              He's familiar with the Rules of Evidence.  I can tell

15     you he knows the Rules of Evidence.  He knows the Rules of

16     Criminal Procedure.

17              THE DEFENDANT:  So I'll take your word for it.

18              THE COURT:  At trial the Rules of Criminal Procedure

19     and Rules of Evidence have to be followed.  Do you understand

20     that?

21              THE DEFENDANT:  I understand.

22              THE COURT:  An attorney, because they've studied and

23     they have experience, is far better able to follow and apply

24     those rules than you will be able to.  Do you understand that?

25              THE DEFENDANT:  Totally agree.

Case 1:21-cr-00387-VEC Document 83 Filed 10/22/21 Page 96 of 108
Case 1:17-cr-00227-VEC   Document 65   Filed 03/28/18   Page 17 of 29        17
I31HDIAC

```
 1    attorney I've had so far.  That's why I want to proceed that

 2    way.  However, I admit that I am not as well versed as an

 3    attorney when it comes to logistics and procedural law or

 4    practice of the law.  At one time when I spoke to the attorneys

 5    at the pretrial, my previous attorneys, they say that I might

 6    be entitled to have an assistant, someone that would help me

 7    navigating through the system; nothing to do with the arguments

 8    that I would make regarding my defense, just how do I get

 9    access to research, how do I access the court because, you

10    know, everything should be conducted electronically, obtain

11    records regarding document cases, and stuff like that.  So that

12    is my question.  How do I go about that, because that's what I

13    don't know?

14             THE COURT:  If you decide to proceed pro se, I'm going

15    to ask Mr. DeMarco to remain as what we call standby counsel.

16    What that means is you're on your own.

17             THE DEFENDANT:  Exactly.

18             THE COURT:  But he'll be there, and you can ask him

19    questions.  He'll be your adviser, but he's not going to

20    represent you.

21             THE DEFENDANT:  Yeah, that's exactly -- that's what I

22    thought he was initially going to be, but then the court

23    decided to let him proceed as my attorney.

24             THE COURT:  Correct.

25             THE DEFENDANT:  Now, the problem I have with that,
```

Addendum  056

Case 1:21-cr-00865-VEC Document 183 Filed 10/21/21 Page 97 of 108
Case 1:17-cr-00227-VEC Document 65 Filed 03/28/18 Page 18 of 29          18
I31HDIAC

1   I've had a lot of problem communicating with Mr. DeMarco, and I

2   think we're at a point where I don't trust him, to be plain

3   honest.  So if we could go with my previous attorney or

4   somebody over there, the pretrial -- at the Public Defender's

5   Office, I would be fine with that under that condition, what do

6   you say, assistance?

7           THE COURT:  Standby attorney.

8           THE DEFENDANT:  Assistance.  I think that would be

9   perfectly suitable.

10          THE COURT:  Well, OK.  So here's the thing.  When I

11  allowed you to discharge the Public Defenders, what I told you

12  is we're not doing this again.  So your standby counsel's going

13  to be Mr. DeMarco, OK.  This is not like you get to go into the

14  dime store and pick out an attorney to be standby counsel.  So

15  this is it.  Mr. DeMarco will be your standby counsel.

16          THE DEFENDANT:  Well, like I said, and I will tell

17  you, but as it is, everything that -- the reason I'm here --

18  and I apologize because I know we went through this before --

19  is because DeMarco -- Mr. DeMarco has submitted documents on my

20  behalf without consulting me, telling me about it, without

21  no -- nothing to do about it, something that went entirely

22  against what we decided the last time we were before you.

23          THE COURT:  Well, that won't happen again because

24  you're going to be the one who decides what to file and what

25  not to file.

I31HDIAC

1    Offender Registration Act.

2           MR. DeMARCO:  It was a Fifth Amendment challenge, I

3    believe, your Honor.

4           THE COURT:  So a different argument.

5           THE DEFENDANT:  Fifth, Eighth Amendment, all of those.

6    It's all in there, and I sent it to him and I sent you a copy.

7           THE COURT:  Did I get that?

8           THE DEFENDANT:  The letter that I sent you the last

9    time, I attached -- that was a document I sent to Mr. DeMarco

10   on November 11, and on January 8 he submitted this document

11   that made absolutely no reference to what I had given him.

12          THE COURT:  OK.  We're not arguing about that anymore.

13          Mr. DeMarco, do you know whether we've got -- or, Dan,

14   do you know whether we've got that?

15          THE LAW CLERK:  Judge, I do believe we received it as

16   an attachment, yes.

17          THE COURT:  Is the attachment to your letter, is that

18   what you want me to consider as your current motion?

19          THE DEFENDANT:  Exactly.

20          THE COURT:  OK.  Ms. Greenwood, how long would you

21   like to respond?  Do you know what we're talking about?

22          MS. GREENWOOD:  I do.  I do know the document you're

23   talking about.  I don't know that I have seen the arguments in

24   detail, but I will go back and refer to them.  I have a trial

25   beginning in two and a half weeks, your Honor, but obviously --

# Mark S. DeMarco
Attorney At Law
3867 East Tremont Avenue
Bronx, New York 10465
718 239 7070
Fax 718-239-2141
MSDLaw@aol.com

January 8, 2018

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

**BY ECF & ELECTRONIC MAIL**

Re:     *United States v. Salvador Diaz*
        **17 Cr. 227 (VEC)**

Your Honor:

**Introduction**

    This Court must decide what effect any alleged constitutional deficiencies in Mr. Diaz's underlying convictions has on the instant prosecution for failing to register as a sex offender under Title I of the Adam Walsh Act, *i.e.*, the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250.

    A 20-year veteran of the U.S. Navy, Salvador Diaz is charged in a one-count indictment with failure to register as a sex offender under Title I of the Adam Walsh Act, *i.e.*, the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250. The SORNA charge is predicated upon Mr. Diaz's conviction in 2000 in a court-martial on three counts of rape and two counts of indecent acts, in violation of Articles 120 and 134 of the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. §§ 920, 934.

    Following Mr. Diaz's early release in 2007, he moved to New York, where he was designated by the state Board of Examiners of Sex Offenders as an offender required to register. Mr. Diaz subsequently registered as required in New York.

**Background**

    Mr. Diaz, then a chief petty officer in the United States Navy, was tried by a general court-martial and convicted on December 1, 2000, of multiple charges of rape and indecent acts with his twelve-year old daughter. *Diaz v. Judge Advocate General of the Navy*, 59 M.J. 34, 35 (C.A.A.F.2003).  He was dishonorably discharged and sentenced to nine years imprisonment,

Hon. Valerie E. Caproni
January 8, 2018

forfeiture of all pay and allowances, and a reduction in pay grade. *See id.*

Below, is a brief overview of Mr. Diaz's extensive attempts to challenge his court-martial and resulting sentence through the military appellate process, the United States District Court for the District of Kansas ("Kansas District Court"), the Tenth Circuit, and the Supreme Court of the United States.

### Military Appellate Review

Defendant appealed his conviction in the United States Navy-Marine Corps Court of Criminal Appeals (the "NMCCA") arguing ineffective assistance of counsel, abuse of discretion by the trial judge, and failure to prove the crime of **rape** beyond a reasonable doubt. *United States v. Diaz,* 61 M.J. 594 (N.M.Ct.Crim.App.2005).

In a detailed opinion, the NMCCA denied the appeal. *See id.* Then Chief Judge Dorman, a named defendant in this case, authored the NMCCA opinion, reviewing plaintiff's "eighteen assignments of error." *See id.* at 597, 599-613. The United States Court of Appeals for the Armed Forces (the "CAAF") affirmed the NMCCA's decision on September 11, 2006. *United States v. Diaz,* 64 M.J. 180 (C.A.A.F.2006). The CAAF denied plaintiff's request for reconsideration on October 11, 2006. *United States v. Diaz,* 64 M.J. 223 (C.A.A.F.2006). Mr. Diaz then filed a petition for a writ of certiorari in the United States Supreme Court. Plaintiff's initial petition was denied on January 16, 2007, *Craig v. United States,* 127 S.Ct. 1141 (2007), and his second *pro se* petition was denied on April 16, 2007, *Diaz v. United States,* 127 S.Ct. 2072 (2007).

### *Habeas* Petitions

While incarcerated at the United States Disciplinary Barracks ("USDB"), defendant filed three petitions for a writ of *habeas corpus* in Kansas District Court, challenging his underlying conviction, appeals process, and conditions of confinement. All three petitions were denied by the Kansas District Court. *See Diaz v. McGuire,* Case No. 02-3271-RDR (D.Kan. Nov. 1, 2004); *Diaz v. Harrison,* Case No. 04-3401-RDR (D.Kan. Sept. 18, 2006); *Diaz v. Inch,* Case No. 06-3306-RDR (D.Kan, Sept. 28, 2007) ("The military courts fully addressed [defendant's] allegations of ineffective assistance of counsel ... and found no merit"). Mr. Diaz appealed two of the decisions, and the Tenth Circuit affirmed both, noting that "Mr. Diaz received the process to which he was constitutionally entitled." *Diaz v. McGuire,* 154 Fed. Appx. 81, 85 (10th Cir.2005); *see also Diaz v. Inch,* 268 Fed. Appx. 802 (10th Cir.2008).

### Subsequent Litigation

In a complaint filed with this Court on or about July 12, 2007, with the exception of an Eighth Amendment claim, all of the claims alleged by Mr. Diaz flowed from his underlying 2000 conviction by court-martial. His complaint alleged that he "did not receive a fair trial

2

Hon. Valerie E. Caproni
January 8, 2018

[because] the conviction was obtained without effective assistance of counsel"; his review process was a "jurimandered farce by the NMCCA"; he was "unlawfully discharged from the military"; and, he was being improperly billed by the government.

By an order dated January 15, 2008, Judge Wood *sua sponte* dismissed the complaint to the extent that it sought to void his conviction and stay New York state proceedings to register him as a sex offender, on grounds that (1) federal district courts lack jurisdiction to consider challenges to a military conviction by court-martial and (2) Mr. Diaz failed to allege facts demonstrating that his ongoing state proceeding provided him "an inadequate opportunity for judicial review" of his federal claims. *Diaz v. Dep't of Defense,* No. 08 Civ. 370 (KMW) (S.D.N.Y. Jan. 15, 2008). His motion for reconsideration of Judge Wood's order was denied on August 27, 2008. *Diaz v. Dep't of Defense,* No. 08 Civ. 370(DC) (S.D.N.Y. Aug. 27, 2008).

On or about October 23, 2008, Judge Chin dismissed with prejudice a subsequent complaint filed by Mr. Diaz. *Diaz v. Dept. of Defense,* No. 08-370, 2008 WL 4671833 (S.D.N.Y. Oct. 23, 2008). Specifically, the District Court dismissed: 1) Mr. Diaz's claims for ineffective assistance of counsel and erroneous review on the ground of collateral estoppel, observing that the claims had been litigated before the military courts, Kansas District Court, and Tenth Circuit; 2) his *Bivens* claim predicated upon the medical care he received while incarcerated as insufficient to support a claim of cruel and unusual punishment, and; 3) his claim for other "remed[ies] sought," such as reinstatement to active duty and monetary damages, for lack of subject matter jurisdiction.

In addition, Mr. Diaz's complaint against the Judge Advocate General of the Navy seeking, among other things, a declaratory judgment voiding his conviction by the court-martial, and seeking relief for claims of ineffective assistance of counsel and erroneous review was dismissed *sua sponte* by this Court. *Diaz v. Judge Advocate Gen. of the Navy,* No. 10-1316.

The Second Circuit affirmed the dismissal of Mr. Diaz'z complaint on claim preclusion grounds. *Diaz v. Judge Advocate Gen. of the Navy*, 413 F. App'x 342 (2d Cir. 2011).

Finally, Mr. Diaz's *pro se* complaint against the Judge Advocate General of the Navy filed on or about February 18, 2010, was dismissed *sua sponte* on that same day by Judge Preska. Although the Court also certified that any appeal would not be in good faith, Mr. Diaz filed timely notice of appeal.

**Discussion**

Mr. Diaz has expressed to counsel and this Court his desire to assert a defense at trial which essentially amounts to a collateral attack of his 2000 conviction by court martial. However, Mr. Diaz may not now seek to dismiss the charge in this indictment or vacate his 2000 conviction by asserting a defense at trial which collaterally attacks the offenses underlying the registration requirement.

3

Hon. Valerie E. Caproni
January 8, 2018

In *Custis v. United States*, 511 U.S. 485, 114 S. Ct. 1732, 128 L. Ed. 2d 517 (1994), the Supreme Court rejected a defendant's challenge to his enhanced sentencing pursuant to 18 U.S.C. § 924(e) by attacking the validity of the prior convictions which triggered the enhancement. *Id*. at 1739. The defendant contended that one or more of those convictions occurred in cases in which he received ineffective assistance of counsel and that, therefore, the federal court should not count those convictions. *Id*. at 1735-36. Finding that the statute, section 924(e), did not provide for a collateral challenge to the underlying convictions, the Supreme Court declined to find a constitutional requirement that such convictions could be challenged on the ground of ineffective assistance of counsel. *Id*. at 1737.

The Supreme Court added that "[t]he interest in promoting the finality of judgments provide[d] additional support" for its constitutional conclusion. *Id*. at 497. As explained by the Court, "[i]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures and inevitably delay and impair the orderly administration of justice." *Id*. (alteration in original) (internal quotation marks omitted).

As contrasted to a situation in which a defendant was denied any representation by counsel and in which the Court had found that such a conviction "is inherently prejudicial" and that "use of such a tainted prior conviction" to be improper, *id*. at 1737, the Court refused to extend the holding to use of prior convictions attacked on the grounds of ineffective assistance of counsel or on the grounds that a guilty plea was not knowing and intelligent, *id*. at 1738. The Court stated, "None of these alleged constitutional violations rises to the level of a jurisdictional defect resulting from the failure to appoint counsel at all." *Id*.

The decision in *Custis* has been extended to find that a defendant cannot attack prior convictions used to enhance a sentence under the sentencing guidelines. *United States v. Loomis*, 230 Fed. Appx. 938, 939 (11th Cir. 2007) ("we have noted that '[c]ollateral attacks on prior convictions are allowed in federal sentencing proceedings in one narrow circumstance only: when the conviction was obtained in violation of the defendant's right to counsel'") (citation omitted).

In *United States v. Warren*, 335 F.3d 76 (2d Cir. 2003) and *United States v. Bennett*, 604 Fed. Appx. 11 (2d Cir. 2015), the Second Circuit, relying on *Custis*, joined other circuits in holding that the validity of an underlying conviction or sentence may not be collaterally attacked in a supervised release revocation proceeding and may be challenged only on direct appeal or through a habeas corpus proceeding. *See United States v. Francischine*, 512 F.2d 827, 828-29 (5th Cir. 1975) (reaching that conclusion with respect to an attempt to collaterally attack an underlying conviction in a probation violation proceeding); *see also United States v. Hofierka*, 83 F.3d 357, 363 (11th Cir. 1996) (per curiam) ("[A] supervised release revocation proceeding is not the proper forum in which to attack the conviction giving rise to the revocation."); *United States v. Simmons*, 812 F.2d 561, 563 (9th Cir. 1987) ("Irrespective of the merits of [defendant's] claim, an appeal from a probation revocation is not the proper avenue for a collateral attack on the underlying conviction. The conviction may be collaterally attacked only in a separate proceeding

Hon. Valerie E. Caproni
January 8, 2018

under 28 U.S.C. § 2255, and a court should consider the petition for probation revocation as if the underlying conviction was unquestioned.") (internal citations omitted); *United States v. Torrez-Flores*, 624 F.2d 776, 780 (7th Cir. 1980) ("However meritorious this defendant's . . . claim may be, an appeal from a probation revocation is not the proper avenue for a collateral attack on the underlying conviction."); *United States v. Jones*, 27 F.3d 50, 52 (2d Cir. 1994) (per curiam) (holding that the rule in *Custis* applies to "any . . . statutory scheme providing for sentence enhancement on the basis of prior felony convictions").

And in situations more analogous to that before the Court, courts have declined to allow a defendant to collaterally attack a prior conviction that is used to establish an element of the offense for which the defendant is on trial on any grounds other than denial of the right to counsel (that is, absent statutory authorization, see, e.g., 21 U.S.C. § 851, to the contrary).

For example, in *United States v. Rodriguez-Perez*, 428 Fed. Appx. 324 (5th Cir. 2011), the defendant was convicted of illegal re-entry following a deportation. The defendant contended that he should have been allowed to collaterally attack a prior conviction upon which his illegal re-entry conviction and sentence was based because counsel in that prior case was ineffective. According to the defendant, counsel in the prior case did not advise the defendant that a conviction in that case would subject him to deportation, as required by the Supreme Court in *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 1478, 176 L. Ed. 2d 284 (2010), and if he had known of that consequence, he would not have pled guilty. Id. at 327. Similar to Mr. Diaz's argument here, the defendant in *Rodriguez-Perez* argued "that in light of *Padilla* his 1995 conviction was unconstitutionally obtained, his subsequent deportation based on that conviction was invalid, and each of his subsequent convictions and sentences for illegal re-entry, including those in the instant case, are also invalid." *Id.*

However, applying the decision in *Custis*, the court declined to adopt the defendant's arguments, stating, "absent specific statutory authorization to bring such a collateral attack in a later proceeding, a claim of ineffective assistance of counsel does not provide a basis on which a defendant can collaterally attack a prior conviction on which his present conviction or sentence rests." *Id* . at 327-28. See also *United States v. Brand*, 163 F.3d 1268, 1275-76 (11th Cir. 1998) (refusing to allow a defendant to collaterally attack the domestic court order underlying the requirement to pay child support that resulted in a conviction under the Child Support Recovery Act); *United States v. Vanderson*, 2011 U.S. Dist. LEXIS 12074, 2011 WL 553918, at **2-3 (M.D. Ga. February 8, 2011) (trial court denied the defendant's attempt to collaterally attack the validity of a prior conviction the prosecution sought "to use as an admission in a subsequent federal prosecution for the same conduct").

Moreover, as detailed above, Mr. Diaz has taken advantage of multiple opportunities to contest the validity of his underlying conviction in the criminal proceedings that led to the conviction.  Accordingly, the indictment in this case "turn[s] on . . . a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest." Doe, 538 U.S. 7; *See also Daniels v. United States*, 532 U.S. 374, 283 ("If, however, a prior conviction used to

5

Hon. Valerie E. Caproni
January 8, 2018

enhance a federal sentence is no longer open to direct or collateral attack in its own right ...
because the defendant did so unsuccessfully, then that defendant is without recourse. The
presumption of validity that attached to the prior conviction at the time of sentencing is
conclusive, and the defendant may not collaterally attack his prior conviction through a motion
under § 2255).

Indeed, Mr. Diaz appears to have received all of the process to which he was due. He
was convicted after formal criminal proceedings in an adversarial setting and his conviction was
affirmed by several appellate and district courts. The NMCCA reviewed in depth his claims that
he received ineffective assistance of counsel, his conviction was not supported by sufficient
evidence, and the military judge abused his discretion. *See United States v. Diaz*, 61 M.J. 594,
604 (N.M.Ct.Crim.App.2005) ("Without question, the appellant was afforded a fair
court-martial, the results of which are reliable.").

In response to defendant's claims that the prosecution failed to prove the crime of **rape**,
the NMCCA reviewed the issue and found the evidence both "legally and factually" sufficient.
*Id.* at 599. The NMCCA found the testimony of the victim "to be credible and consistent."
*Id.* Moreover, the NMCCA found Mr. Diaz's testimony during his original trial to be
"disingenuous and unworthy of belief." *Id.*

The NMCCA also reviewed each of the military judge's rulings that defendant
challenged, finding that the judge did not abuse his discretion. *See id.* at 608-13.

Mr. Diaz, not satisfied with direct appellate review of his conviction, filed three petitions
for a writ of *habeas corpus* in Kansas District Court. His November 3, 2006 petition included the
identical claims of ineffective assistance of counsel and abuse of discretion by the military judge,
as well as allegations that the CAAF failed to employ the correct standard of review and the
NMCCA did not give full consideration to errors arising from the court-martial. The Kansas
District Court found that "the military courts considered these claims and applied appropriate
legal standards to issues involving mixed questions of fact and law." *Diaz v. Inch,* Case No.
06-3306-RDR (D.Kan, Sept. 28, 2007). The Tenth Circuit affirmed the District Court's decision.
*See Diaz v. Inch,* 268 Fed. Appx. 802 (10th Cir.2008).

Clearly, defendant's claims have been reviewed, both directly and collaterally, and are
barred from further review. Mr. Diaz can no longer challenge his underlying conviction on
claims of ineffective assistance of counsel, sufficiency of the evidence, or erroneous review. Nor
can he assert these claims as a defense at trial since he is collaterally estopped from asserting
them, as the claims would be premised on claims that have been fully and fairly litigated in the
prior proceedings.[1]

---

[1] In light of the above, it is respectfully requested that this Court decide Mr. Diaz's
motion to dismiss filed on or about July 14, 2017.

Addendum  064

Thank you for your attention to this matter.

Respectfully submitted,

*Mark S. DeMarco*

Mark S. DeMarco
Steven E. Lynch
Attorneys for Salvador Diaz

cc:     Jessica Greenwood, Esq.
        Assistant United States Attorney
        By Electronic Mail

Case 1:21-cv-00858-VEC Document 183 Filed 10/27/21 Page 106 of 108
Case 1:17-cr-00227-VEC Document 49 Filed 11/08/17 Page 2 of 19          2
HABQDIAc

1                    (In open court; case called)

2              MS. GREENWOOD:  Good afternoon, your Honor.  United

3        States by Jessica Greenwood on behalf of the government.

4              THE COURT:  Good afternoon.

5              MR. DeMARCO:  Mark DeMarco for Mr. Diaz.  Good

6        afternoon, your Honor.

7              THE COURT:  Good afternoon, Mr. DeMarco.  Good

8        afternoon, Mr. Diaz.

9              Mr. DeMarco, what are we doing?

10             MR. DeMARCO:  Well, I'm not quite sure.  Here is where

11       we are though.  I have consulted with Mr. Diaz.  I have

12       researched the path that he desires to take in this case, and

13       I'm in disagreement with him.  I'm kind of in the same boat as

14       my predecessors were.

15             THE COURT:  But he's the client.

16             MR. DeMARCO:  I know that.

17             THE COURT:  He has to decide.

18             MR. DeMARCO:  I know that.

19             THE COURT:  OK.

20             MR. DeMARCO:  He gets to decide certain things.  I

21       don't have to file every motion that he thinks I should file,

22       Judge, that's true.  And that is I think where the impasse is.

23       I have planned today to come in and adopt the fully briefed

24       motion that was submitted and responded to you by my

25       predecessor.

Case 1:21-cr-00085-VEC Document 83 Filed 10/21/21 Page 107 of 108
Case 1:17-cr-00227-VEC   Document 49   Filed 11/08/17   Page 3 of 19          3
HABQDIAc

1      Mr. Diaz doesn't want that.  He has indicated a desire

2  to collaterally attack the underlying conviction which is

3  roughly 20 years old.  He has provided me with some of the

4  research that he has done.  I have looked at the work he has

5  provided me with, some of the sources he has sent to me, and

6  I'm in disagreement with him.  He doesn't want me to adopt the

7  motion to dismiss.  Instead, he indicated to me that he wishes

8  to proceed pro se if that is the course I'm going to take.

9      THE COURT:  I guess I'm not quite understanding how

10  launching a collateral attack on the underlying court marshal

11  is -- if he wants to do that, that's fine.  That doesn't have

12  anything to do with this case, right?  This case is what it is.

13  You are charged with failing to register.  You may well have

14  some claim that the underlying court marshal was invalid, it

15  should be overturned, whatever.  But as of right now, that

16  hasn't happened.  As of right now what I've got is an

17  indictment that charges you, Mr. Diaz, with failing to

18  register.

19      I think realistically in this case there are three

20  options:  Three.

21      MR. DeMARCO:  Two and a half maybe.

22      THE COURT:  Two and a half.  We can proceed with the

23  motion to dismiss, and I decide it is a valid objection or it's

24  not a valid objection.  I haven't really looked at the papers

25  so I don't really know.  I have no opinion on whether it is a

Case 1:21-cr-00287-VEC Document 183 Filed 10/22/21 Page 108 of 108
Case 1:17-cr-00227-VEC Document 49 Filed 11/08/17 Page 8 of 19        8
HABQDIAc

1    wants what's best for you.  Mr. DeMarco is a good lawyer.  He

2    is not going to do anything that would be contrary to your best

3    interest.  Again, at the moment there is sort of two paths:  I

4    can proceed and decide the motion to dismiss.  I get your point

5    that says if I dismiss the indictment, you're still in this

6    quandary of whether to register or not, and you may just get

7    charged again.  You're not going to get charged again in the

8    Southern District of New York because I will dismiss the

9    indictment.  They can appeal it.  And they probably would if I

10   dismiss -- I mean, I don't know, I'm guessing.  I'm

11   speculating.  But I guess the alternative is we somehow -- you

12   and Mr. DeMarco somehow figure out how to tee up for a legal

13   decision whether you can essentially collaterally attack that

14   conviction as part of this prosecution.

15         THE DEFENDANT:  If that avenue is open to me, I'm

16   willing to -- I mean, I --

17         THE COURT:  And if I denied that, let's say

18   hypothetically it gets briefed, and I say this is not the right

19   forum; that is, wrong church, wrong pew, you need to be

20   somewhere else to do that.  I, for our purposes, have to

21   consider what I've got in front of me, and a SORNA prosecution

22   is not where you can collaterally attack your conviction.

23         Let's say I decide that.  Then you're back to where we

24   were before, which is you've got a choice.  You can plead

25   guilty.  You can plead not guilty.  That seems to me that

Addendum 068